Minton v. the Commonwealth.

---

CASE 94—INDICTMENT—SEPTEMBER 20, 1881.

## Minton v. The Commonwealth.

APPEAL FROM BRECKINRIDGE CIRCUIT COURT.

1. The fifth instruction for appellee is error.
2. Whenever a person is in imminent danger of great bodily harm, or it is being inflicted upon him, whether it endanger his life or not, he has the right to use such force as appears to him in the exercise of a reasonable judgment to be necessary to repel or deliver himself

from it, unless by his own wrongful act he makes the harm or danger to himself necessary or excusable in the person who is inflicting or about to inflict it upon him.

:3. The third instruction, taken in connection with the fifth, excludes appellant from the benefit of the law applicable to the reckless use or discharge of the pistol without intending to injure any one thereby. An instruction should have been given to meet that view of the case.

MERCER, HAYCRAFT, KINCHELOE, AND ESKRIDGE FOR APPELLANT.

:1. The court should have given the whole law applicable to the case. (7 Bush, 327.)

:2. The third instruction is an abstract proposition.

:3. In the fifth instruction the court say that the right of self-defense did not exist, unless to avoid great bodily harm, which would endanger appellant's life. This is error. (Bishop on Crim. Law, vol. 2, 630; Bl. Com., vol. 2, 191; 13 Bush, 718.)

-4. There is no instruction as to involuntary manslaughter.

.P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.

:1. The instructions are full, and substantially cover the whole law of the case.

:2. They give to appellant the full benefit of the law as to involuntary manslaughter. Taking them as a whole, no error has been committed to appellant's prejudice.

-JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

The appellant Minton, as the evidence tends to show, was at his voting precinct, partially intoxicated, on the day of the election for representative to the legislature, and that Willis T. Frank, who was a candidate for that office, and the favorite of Minton, was also there, when one Speak rode up in haste, huzzaing for Frank's opponent. He alighted from his horse, began dancing, and continuing to shout for his candidate, and Minton answered him with a shout for his candidate. This occurred several times, when Minton struck him once or twice in the back of the head or neck, and Speak turned, seized him by the throat, backing him to a corner of the fence, and choked him until he was black in the face. The father of Minton attempted to separate

Minton v. The Commonwealth.

them, and while he was so engaged, or just afterward, the appellant Minton drew his pistol, and, either intentionally or accidentally, fired it and killed said Willis T. Frank. Immediately after the shot, the crowd, which had pressed close to Speak and Minton during their struggle, and manifesting favor to the former, loudly exclaimed "kill him!" and pursued Minton with rocks and clubs.

He was indicted, tried, and convicted of the offense of manslaughter, and sentenced to the penitentiary for twenty-one years, and he prosecutes this appeal, seeking a reversal mainly on the ground that the court erroneously instructed the jury.

This is the only question necessary to be considered.

The fifth instruction is as follows:

"But if defendant assaulted Speak, and Speak repelled the assault with more violence and more force than was necessary to defend and protect himself from the force offered by defendant, and was inflicting, or about to inflict, great bodily harm upon defendant, *such as would endanger his life*, or if defendant believed, and had reasonable grounds to believe, that Speak was then about to inflict great bodily harm upon him, *such as would endanger his life*, and he had no other apparently safe means of escaping therefrom, then he had the right to use such force and such means, and no more, as was necessary to save himself from such impending danger; and if Frank was killed by the use of such means, the defendant is excusable, and should be acquitted."

By this instruction the jury were, in effect, told that the defendant had no right to shoot in his self-defense, unless the bodily harm which was being or about to be inflicted upon him *endangered his life*. This is not the law of self-

defense.   Whenever a man is in imminent danger of *great* bodily harm, or it is being inflicted on him, whether it endangers his life or not, he has the right to use such force as appears to him, in the exercise of a reasonable judgment, to be necessary to repel, or deliver himself from it, unless by his own wrongful act he makes the harm or danger to himself necessary or excusable in the person who is inflicting or about to inflict it upon him.

While putting out an eye, cutting off an ear, slitting the nose, bruising the body, or choking a man with great violence, may not endanger his life, still he has the right to use such force, even to the taking of life, as may be reasonably necessary to prevent or rid himself of imminent danger of the unlawful infliction of such injuries upon him.

The court erred in limiting the degree of bodily harm to such as endangered the defendant's life, and to that extent only the instruction quoted was erroneous.

We quote the sixth instruction, which is: "If the jury shall believe from the evidence that the time the pistol was fired by the defendant the fight between defendant and Speak had ended, and that defendant had no intention of using it in the fight, or of renewing the fight with Speak, but was holding it merely as a weapon of defense, and it was discharged by accident, and not designedly or recklessly on the part of defendant, and by such discharge Frank was killed, the defendant is excusable, and should be acquitted."

Instruction No. 3, taken in connection with the one quoted, excludes the defendant from the benefit of the law applicable to the reckless use or discharge of the pistol without intending to injure any one thereby.   For if, after the conflict had ended between defendant and Speak, the

pistol was accidentally fired, resulting from the recklessly careless use of it by the defendant, in view of the facts of this case, he was guilty of manslaughter, but not of murder, and the jury should have been so instructed. (Chrystal v. Commonwealth, 9 Bush, 671.) There was no instruction given presenting this view of the case to the jury.

We see no other error in any of the instructions given.

Wherefore, the judgment is reversed, and cause remanded for a new trial.