CASE 63.—PROSECUTION AGAINST JAMES LANE FOR AR-
SON AND CONSPIRACY TO BURN A DWELLING.—
Sept. 24, 1909.

## Lane v. Commonwealth

Appeal from Estill Circuit Court.

J. P. ADAMS, Circuit Judge.

Defendant convicted and appeals.—Reversed.

1.  Arson—House Burning—Indictment.—Ky. St. 1909, Sec. 1170,
    declares that if any person shall willfully, etc., burn any
    dwelling house occupied as a residence, he shall be punished
    etc. Held, that an indictment accusing defendant and others
    ot burning a dwelling house, in that on December 16, 1908,
    within E. county, they did unlawfully, etc., set fire to and
    burn one dwelling house occupied as a residence by L., sit-
    uated near Cedar Grove church in said county, by pouring
    oil in and on said house and igniting the same with fire, so
    that it was burned to the ground, sufficiently charged the
    crime described in such section:
2.  Arson—Indictment—Sufficiency.—The indictment was also
    sufficient as an indictment for arson as a common-law felony.
3.  Conspiracy—House Burning — Indictment — Description of
    Property.—An indictment that on a specified date in E. county
    defendant and certain others named conspired to set fire
    to and burn a dwelling house occupied as a residence and
    situated near Cedar Grove church in said county, and that
    while the conspiracy existed, and as a result thereof, and
    pursuant thereto, defendant H. set fire to and burned the
    house, and that the other defendants aided, assisted, coun-
    seled, encouraged, advised, and hired said H. to set the fire
    against the peace and dignity, etc., sufficiently charged con-
    spiracy to burn the house, and, having sufficiently described
    the same to identify it, was not objectionable for failure to
    allege the owner.
4.  Criminal Law—Harmless Error—Punishment—Instructions.—
    Where accused was indicted for house burning under Ky.
    St. 1909, Sec. 1170, prescribing the penalty at not less than

10 nor more than 20 years' imprisonment in the penitentiary, he was not prejudiced by the instruction that if the jury found him guilty, they should assess his punishment under section 1167, prescribing the punishment for arson at from 5 to 10 years' imprisonment.

5. Witnesses — Impeachment — General Reputation.— Evidence that the general reputation of a witness for chastity was bad was competent to impeach her.

6. Arson—Criminal Law—House Burning—Evidence—Insurance. —In a prosecution for arson, evidence that accused had procured $300 insurance on the house burned about two months before was admissible only as proof of motive, and should be limited thereto.

7. Criminal Law—Evidence of Accomplice—Corroboration.—In a prosecution for arson, evidence held insufficient to corroborate the testimony of an accomplice who did the burning to connect accused with the offense and sustain a conviction under Cr. Code Prac. Sec. 241, requiring corroboration of an accomplice.

8. Criminal Law—Evidence—Letters.—Where, in a prosecution for arson, certain letters were alleged to have been written by accused to H., the person who did the burning, urging him to do so, neither the letters produced nor the contents of those claimed to have been lost were admissible without proof showing them to have been written or authorized by accused.

9. Criminal Law—Accomplices—Corroboration.—Where two or more accomplices testify, they are not deemed to corroborate each other.

10. Criminal Law—Trial—Acquital—Direction.—Where, in a prosecution for arson, there was nothing in the record to corroborate the testimony of accomplices intending to connect accused with the crime charged. Cr. Code Prac. Sections 241, 242, made it the duty of the court to direct the jury to acquit.

GRANT E. LILLY for appellant.

JAS. BREATHITT, Attorney General and TOM B. McGREGOR, Assisant Attorney General, for Commonwealth.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Appellant was separately tried in the Estill Circuit Court under an indictment charging him, his wife, Callie Lane, Jack Hawkins, and Armilda Roberts

with the crime of house burning in pursuance of a conspiracy entered into and existing between them; the act of setting fire to the house having, as alleged in the indictment, been assigned by agreement among the conspirators to Jack Hawkins by whom it was performed. The trial resulted in appellant's conviction and the fixing of his punishment at confinement in the penitentiary five years.

The indictment reads as follows: "The grand jury of Estill county, in the name and by the authority of the commonwealth of Kentucky, accuse Jack Hawkins, James Lane, Callie Lane and Armilda Roberson of the crime of burning a dwelling house com mitted as follows, viz.:

That said Jack Hawkins, James Lane, Callie Lane and Armilda Roberson, on the 16th day of December, 1908, in the county aforesaid and before the finding of this indictment, did unlawfully, willfully, maliciously and feloniously set fire to and burn one dwelling house which was occupied as a residence by Jesse Lunsford, which dwelling house was situated near Cedar Grove church in said county, by pouring oil in and upon said house and by igniting same with fire so that said house was burned to the ground. Second: The grand jury of Estill county in the name and by the authority of the commonwealth of Kentucky accuse Jack Hawkins, James Lane, Callie Lane and Armilda Roberson of the crime of burning a dwelling house, committed in form and manner as follows:

That on the 16th day of December, 1908, in the county and circuit aforesaid the defendants, Jas. Lane, Callie Lane, Armilda Roberson and Jack Hawkins unlawfully, willfully and maliciously entered into a conspiracy with each other for the purpose and intention

to set fire to and burn a dwelling house occupied by Jeff Lunsford as a residence and situated near Cedar Grove church in said county and that while said conspiracy existed, and as a result thereof, and in pursuance thereto the said defendant, Jack Hawkins, did set fire to and burn said dwelling house; that the said defendants, James Lane, Callie Lane and Armilda Roberson, aided, assisted, counseled, encouraged, advised and hired the said Jack Hawkins to set fire to and burn the said house, against the peace and dignity of the commonwealth of Kentucky.''

Appellant complains of the judgment of conviction, and seeks its reversal upon various grounds assigned as error in support of his motion for a new trial filed in the court below. He insists that the indictment is fatally defective, and that his demurrer to it should have been sustained. We can not sustain this contention. In the first count of the indictment all the defendants named therein are in apt language charged with the crime of house burning as defined by section 1170, Ky. St. (Russell's St., Sec. 3180). The conspiracy to burn the house is properly charged in the second count of the indictment, as is the act of Jack Hawkins in burning it in pursuance of the conspiracy. While the name of the owner of the house is not stated in the indictment, it is therein alleged that the house was situated near Cedar Grove church, in Estill county, and that it was, when burned, occupied as a residence by Jeff Lunsford. As a matter of fact it appears from the proof that the title to the property was in a relative of appellant who held it in trust for him. The omission from the indictment of the name of the owner of the house burned did not vitiate the indictment, in view of the sufficient description and identification of the prop-

erty and of the offense, in other respects, contained in that instrument. Cr. Code Prac., Sec. 128; McBride v. Commonwealth, 4 Bush, 331.

In other words, the indictment contains "a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case." Cr. Code, Sec. 122, subsec. 2.

Though intending to charge the crime of house burning as defined by section 1170, Ky. St., the indictment is also good as an indictment for arson which is a common-law felony, punishable, however, in this state by confinement in the penitentiary not less than five nor more than twelve years, as provided in section 1167, Ky. St. The trial court evidently treated the indictment as one for arson, as by the instructions to the jury they were told, if they found appellant guilty, they should punish him as prescribed by section 1167, supra, whereas the punishment for house burning under section 1170 is confinement in the penitentiary not less than 10 nor more than 20 years. The course taken by the trial court was doubtless suggested by section 263, Cr. Code, which declares arson and house burning degrees of the same offense, and also section 262, Cr. Code, which provides:

"Upon an indictment for an offense consisting of different degrees, the defendant may be found guilty of any degree, not higher than that charged in the indictment, and may be found guilty of any offense included in that charged in the indictment." If the case should have been submitted upon the evidence to the jury, it is manifest that appellant can not com-

plain that the jury were instructed if they found him guilty to give him the punishment prescribed by section 1167, Ky. St., for arson, instead of the greater punishment prescribed by section 1170 for house burning.

Appellant also contends that the trial court erred in refusing him permission to prove that the reputation of Lucy Rowland, a commonwealth witness, for chastity, was bad; the avowal as to each witness by whom her reputation was attacked being that her general reputation was that of an unchaste woman, and that she was the keeper of a bawdy-house. The impeaching evidence was clearly competent. Chastity is recognized by the law books as an essential ingredient of good moral character, and the want of it may be proved, not by special acts, but as a matter of general reputation, for the purpose of attacking the veracity or credibility of the witness assailed.

It is further contended by appellant that the court erred in allowing evidence of the fact that there was insurance of $300 upon the house burned which appellant had procured about two months before the burning.

This evidence was competent, as it tended to prove a motive upon appellant's part for the burning of the house, and for entering into the alleged conspiracy to that end; but the court should have admonished the jury that such was the only purpose and effect of its introduction.

Finally, it is insisted for appellant that there was no legal corroboration of the testimony of Jack Hawkins, the self-confessed burner of the house and chief witness for the commonwealth, and therefore the court at the conclusion of the commonwealth's evidence should, as then requested by appellant, have

peremptorily instructed the jury to acquit him. The soundness or unsoundness of this contention must be determined from the evidence, which was in brief as follows:

Jack Hawkins testified that he burned the house and was employed by appellant to do so, who agreed to pay him for the service $100 of the insurance expected to be obtained by the destruction of the house; that he was provided by appellant at the latter's residence, in Richmond, with a sack containing provisions and a bottle of coal oil to be used in burning the house, and that, leaving Richmond at 4 o'clock p. m., he arrived at Cedar Grove, Estill county, where the house to be burned was situated, about midnight, but did not set fire to it until about daylight the next morning, and did not remain to see whether the house burned; that he then returned to Richmond, informed appellant of what he had done, and the latter rebuked him for not remaining at the place of the burning long enough to see whether the house was consumed.

Hawkins also testified that no one beside himself and appellant was present or heard what was said when he was employed to burn the house when he left Richmond on that mission, or when he returned and reported to appellant the result; but claimed that appellant's wife, Callie Lane, and his sister, Mrs. Roberts, talked to him about the burning of the house before it was done. He also testified that appellant wrote him several letters urging him to burn the house, some of which he said were delivered to him by Mrs. Roberts and that she read one or more of the letters to him. The witness produced two letters, one purporting to be signed by appellant and the other containing four cross-marks each in the form

of the letter X, and he said Mrs. Roberts told him he would know the meaning of the marks, and they indicated that he was to burn the house.

Neither letter is copied in the record, and it is not clear from the record whether the contents of the two letters in question or only the signature and marks were introduced as evidence; but it does appear that the court permitted Hawkins to testify as to the contents of certain lost letters on the subject of the house burning he claimed to have received from appellant, to which as well as the introduction of the two letters produced, appellant at the time objected and excepted. Hawkins did not claim to know the handwriting of appellant, and did not state that he wrote the two letters produced or those claimed to be lost. Appellant denied writing any of the letters, or that his name appearing to one of them had been written by him, or that the letters had been written for him, or at his instance. No identification of the letters or proof that they were in his handwriting was made by any witness during the trial, and Mrs. Roberts in testifying denied all knowledge of the letters or that she read or delivered any such letters to Hawkins, and further declared that she had no knowledge of the burning of the house, and that she never had any conversation with Hawkins on that subject. Manifestly neither the letters produced nor the contents of those claimed to have been lost, in the absence of proof showing them to have been written or authorized by appellant, should have been allowed to go to the jury as evidence. The only other evidence introduced by the commonwealth for the purpose of connecting appellant with the burning of the house, or with reference to his procurement of the insurance upon it, was the finding by one witness

of a bottle near the place where the house was burned, the fact that Hawkins' wife testified that she saw him in a conversation with appellant on the day he claimed to have left Richmond to burn the house, and the testimony of Lucy Rowland that she saw appellant and Hawkins together and perhaps the latter and Mrs. Roberts in a conversation about the same time.   But neither of the two witnesses mentioned claimed to have heard any conversation between appellant and Hawkins, or between the latter and Mrs. Roberts, on the occasion referred to.   The bottle found near the place of the burning was according to the testimony of the finder a beer bottle, whereas the one used by Hawkins in burning the house was, according to his testimony, a whisky bottle.

In addition to appellant's own testimony contradicting every material statement of Hawkins which tended to connect him with the burning of the house in Estill county and denying all participation in or knowledge of that crime, his wife and Mrs. Roberts both contradicted Hawkins in so far as his testimony connected them with a conspiracy to burn the house, or knowledge of his doing so, appellant's wife, as did Mrs. Roberts, denying that she ever had any conversation with him on the subject, the testimony of the former being admitted without objection.

It appears from the evidence introduced in appellant's behalf that he, his wife, Callie Lane, and sister, Mrs. Roberts, are persons of excellent character, while much of it showed Hawkins and Lucy Rowland to be persons of bad reputation, the former having before the trial of appellant been convicted of the crime charged in the indictment.   It also appears that no attempt was made by appellant to collect the insurance after the burning of the house.   We quite agree

with counsel for appellant that only the testimony
of Hawkins tends to connect appellant with the crime
charged in the indictment, and that it was wholly
uncorroborated by other evidence tending to show
appellant's guilt.   If the whole of his testimony
should be accepted as true, he was nevertheless a
mere accomplice, whose testimony alone was insuffi-
cient to establish the alleged conspiracy charged in
the indictment, or to authorize the conviction of ap-
pellant as an aider and abettor in the commission of
the crime for which he was tried.   Cr. Code, Sec.
241.

"The uncorroborated testimony of an accomplice
is wholly insufficient to convict the accused of a crime,
or of any of its constituent elements, or to render
admissible any confessions or admissions of the par-
ties which depend upon and must be preceded by evi-
dence of a conspiracy, unless other evidence besides
that of the accomplice is produced tending to prove
a conspiracy, and connect the accused therewith, and
evidence merely showing that the offense was com-
mitted and the circumstances thereof is as insufficient
for that purpose as it would be to connect the accused
with the commission of the offense itself." Bowling
v. Commonwealth, 79 Ky. 604, 3 R. 610; Frazier v.
Commonwealth, 76 S. W. 28, 25 Ky. Law Rep. 461;
also, Howard v. Commonwealth, 110 Ky. 356, 61 S.
W. 756, 22 Ky. Law Rep. 1845; Id., 114 Ky. 372, 70
S. W. 1055, 24 Ky. Law Rep. 1225, and authorities
therein cited upon this subject.   Even where two or
more accomplices are produced as witnesses they
are not deemed to corroborate each other.   Blackburn
v. Commonwealth, 12 Bush, 181.

Aside from the uncorroborated testimony of Haw-
kins, there is nothing in the entire bill of evidence

furnished by the record that implicated appellant in the crime charged in the indictment, and, this being true, sections 241, 242, Cr. Code, made it the duty of the trial court to instruct the jury to render a verdict of acquittal, and this should have been done.

For the reasons given, the judgment is reversed, and cause remanded for a new trial consistent with the opinion.