## Lexington & Eastern Railway Company v. Stacy.

(Decided November 14, 1916.)

### Appeal from Perry Circuit Court.

Master and Servant—Assumption of Risk.—A railroad trackwalker knowing and appreciating the danger of slate and dirt falling from the walls and roof of a tunnel through which he was required to pass daily, having been informed by his superior that

he must go through the tunnel at least once each day or quit work, continued in the employment and injury resulted, held that the injury resulted from an assumed risk rather than from any actionable negligence upon the part of the employer.

BENJAMIN D. WARFIELD, C. H. MOORMAN, S. M. WILSON and WOOTTON & MORGAN for appellant.

F. J. EVERSOLE, HOGG & JOHNSON, JOHN C. EVERSOLE, H. C. FAULKNER, W. E. FAULKNER and JOHN B. EVERSOLE for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

In the spring of 1915 appellant was engaged in building an extension of its railroad line from Jackson in Breathitt county to McRoberts in Letcher county, Kentucky, and had driven the tunnel known as Hoskin's tunnel in Perry County, in which the accident involved here occurred, and had completed its railroad bed and laid rails through that tunnel and from the end of Munday's tunnel to Typo station, a distance of about eight miles, and this section was connected with and formed a part of its railroad trackage, over which it operated freight and passenger trains upon regular schedule in the public service from and after May 25, 1915.

About the time this service through Hoskin's tunnel was begun, the eight-mile section referred to above was placed under the direct charge of A. J. Wooten, a section foreman, and appellee was employed as one of the gang of men working upon this section under Wooten. He worked as a section hand in keeping this eight miles of track in repair, in the course of which work he was occasionally engaged in work upon the track in Hoskin's tunnel until about June 15, 1915, when he was made track walker for this eight-mile section, in which capacity it was his duty, in walking the eight miles of track, to walk through Hoskin's tunnel at least once each day, including Sunday, for the purpose of examining the track, to tighten any loose bolts, drive down any loose spikes and to remove any obstruction that he might find upon the track, for the performance of which duty he was required to carry a large wrench and a heavy hammer.

Appellee had lived practically all of his life about midway of this section, and in walking the track and returning to his home it was necessary for him to walk

through Hoskin's tunnel twice daily. The tunnel had not been faced with timbers or with concrete or in any way, but the loose rock, so far as could be done, had been removed by appellant before the track had been laid through the tunnel. Of this condition of the tunnel appellee knew, and in walking through the tunnel he had frequently found slate, rock and dirt that had fallen upon the track from the roof or sides of the tunnel, which he had removed from the track and reported to his superior Wooten. Appellee further testifies, in which he is corroborated by Wooten, that about a week before the accident occurred he had a conversation with Wooten with reference to the falling stone and dirt from the roof of the tunnel and his duties in going through the tunnel; that in that conversation Wooten told him that the road supervisor, who was superior to both Wooten and appellee, had told him he had been informed that appellee was not going through the tunnel, but was going around it, and that he had instructed Wooten to tell appellee that he must walk the track through the tunnel at least one way each day, and that if he would not do it they would get somebody that would. Appellee admitted that upon some trips he had gone around rather than through the tunnel, but promised that in the future he would walk the track through the tunnel as required, although he expressed to Wooten some apprehension or fear that it was dangerous to do so. As he expressed it, he felt "a little shaky" about going through the tunnel.

On July 16th as he was walking the track through the tunnel a large stone and some dirt fell from the roof to the track so near to the place where appellee was at the time that he attempted to escape injury by jumping to one side and in so doing fell and received some slight injury to one of his legs and a blow upon the abdomen which produced a hernia.

Upon a trial of this action, which was brought by appellee to recover damages for these injuries, a judgmen resulted in his favor for $2,000.00, to reverse which this appeal is prosecuted.

At the close of the evidence for appellee, and again at the close of all the evidence, appellant moved for a peremptory instruction, which motions were overruled by the court. That the court erred in overruling these motions is the first reason for reversal urged upon us.

It is not contended by counsel for appellee that any assurances were given him that the tunnel was a safe place in which to work, or that it would be made more safe than it was, but it is insisted that the command of Wooten that appellee must go through the tunnel at least once each day upon pain of loosing his job, brings this case within that class where an employe is relieved from the assumption of the risk of dangers known to the master, when the condition is known but danger is not appreciated by the servant. This contention was adopted by the trial court and the case went to trial upon instructions presenting that rule of law. We are unable to concur in this view of the facts here. Appellee knew as well as appellant that the sides and roof of the tunnel were not supported by timber or concrete or in any way, and he not only knew that loose stone and dirt might, at any time, fall upon the track while he was walking through the tunnel, but he also knew that stone and dirt did so fall every once in a while, and he had upon numerous occasions removed same from the track; that he knew and fully appreciated every danger connected with his work as well as, if not better, than any one else, is attested by the fact testified to by him that he had not only encountered evidence of this danger, but had expressed fears about his safety in the prosecution of his work as a result thereof, and to escape this danger had, upon some occasions, gone around rather than through the tunnel, and not only did appellee know and appreciate the dangers incident to his employment, and from which the accident actually befell him, but he does not even contend that the master gave him assurance either that the place was a reasonably safe place in which to work, or that the dangerous condition would be remedied.

This case is clearly distinguished from the class of cases upon which appellee attempts to place it, by the fact that in each of the cases cited by appellee in support of his contention a specific act was ordered to be done upon a certain occasion, and the accident occurred when the servant was obeying the specific order of the master, while here the thing that appellee was ordered to do, he was informed he must do all the time; in other words, that whatever risk was involved in going through the tunnel, was an incident of his employment and must be incurred by appellee in the performance of his regu-

lar routine work. In no case cited by appellee, or of which we have knowledge, has the rule ever been extended so as to include such a case as this one; in fact, to so extend it would free the servant from the assumption of any risk from a dangerous condition, known to be such by both the master and the servant, but which the master could not or did not intend to remove.

The principal cases cited and relied upon by appellee are Pullman Co. v. Geller, 128 Ky. 72; Long's Admr. v. I. C. R. Co., 24 K. L. R. 567, 58 L. R. A. 237; Ross-Paris Co. v. Brown, 121 Ky. 822. In each of these cases, as in all of the cases cited for appellee, the rule contended for was applied where the injury resulted in the performance of a specific act ordered to be done by the master at a particular time. While we do not hold the rule can never be applied to cover more than a specific act, that is its usual application, and it certainly is not applicable under the facts here.

The facts of the instant case clearly bring it within the general rule that where a business is of a hazardous nature and the employe's surroundings are not free from danger, if he, with full knowledge of such conditions and danger voluntarily continues in the employment, and injury results, the injury is held to be the result of an assumed risk rather than of any actionable negligence on the part of the master. J. M. Robinson, Norton & Co. v. Legrande, 151 Ky. 188; Breckinridge & Pineville Syndicate v. Murphy, 38 S. W. 700; Nicholas v. E. H. Abadie Co., 124 S. W. 325; Kirby v. Hillside Coal Co., 106 S. W. 278, and many other cases.

In the case of Wilson v. Chess-Wymond Co., 117 Ky. 567, this court said:

"The duty of the master to furnish a safe or reasonably safe place in which the laborer may do his work is frequently misunderstood or misapplied. In the first place, the master is not required to furnish an absolutely safe place. If the work is in and of itself dangerous, the master does not insure against such danger. On the contrary, there is nothing better settled than that the servant assumes the ordinary risks and hazards incident to the character of his work. Whatever may be the moral obligation resting upon those who employ people in hazardous work to furnish them the safest possible means to protect them from injury, the law does not forbid a laborer's undertaking a hazardous em-

ployment with full knowledge of its dangers, if he wants to. If he does, the law leaves the risk upon him; for he has assumed it."

The evidence having shown conclusively that the danger from falling slate, etc., in the tunnel was an ordinary hazard of appellee's employment, and that he knew of and realized that danger as well as any one else could have known it, it follows the motion for a peremptory instruction should have been sustained.

Wherefore the judgment is reversed for proceedings consistent herewith.