## Mack Logan and Frank Tribble v. Commonwealth.

(Decided February 16, 1917.)

### Appeal from Hopkins Circuit Court.

1. **Criminal Law—Homicide—Conspiracy—Instruction.**—In a criminal prosecution charging the defendants with committing murder pursuant to a conspiracy, the trial court qualified the self-defense instruction by telling the jury that they could not acquit the defendants on the ground of self-defense or the defense of each other, if the jury believed as in instruction No. 7. By the first part of instruction No. 7, the jury were told, in substance, that if the defendants conspired to kill the deceased and did kill him pursuant to, and during the existence of, such conspiracy, they should not acquit the defendants on the ground of self-defense or defense of another or apparent necessity therefor, and then added the following: " . . . ; and the court further instructs you that if you believe from the evidence beyond a reasonable doubt that K. D. Rogers first began the difficulty by shooting at K. H. Keach or by making a demonstration as if to shoot the said Keach, then also in that event you will not acquit the defendants or any of them on the ground of self-defense or defense of another or apparent necessity as set out in instruction No. 6." Held, that as the quoted part of the instruction deprived the defendants of the right of self-defense if Rogers began the difficulty by shooting or attempting to shoot Keach, and that, too, even though no conspiracy was shown, that part of the instruction was clearly erroneous and prejudicial.

2. **Criminal Law—Homicide—Aiders and Abettors—Instruction.**—An instruction telling the jury to find certain defendants guilty, if they aided and abetted the principal defendant, who shot the deceased, is subject to criticism, in that it authorized a conviction, regardless of whether the act of the principal defendant was justifiable or not.

3. **Criminal Law—Arrest—Duty of Posse—Instruction.**—It is the duty of a person summoned by an officer to assist in making an arrest to render such assistance, and on a trial of the members of such posse on the charge of murder the court should so instruct the jury.

4. **Witnesses—Impeachment.**—A female witness may be impeached by evidence of her bad reputation for chastity and virtue.

5. Criminal Law—Res Gestae—Exclamation of Bystander—Evidence.—Exclamations of a bystander in no way connected with the main fact are not admissible in evidence as part of the res gestae.

6. Criminal Law—Threats—Identity of Person Threatened—Evidence.—On a prosecution for murder, evidence of a threat is not admissible where neither the language employed nor the attendant circumstances is sufficient to identify the person threatened.

7. Witnesses—Impeachment.—Under section 597 of the Civil Code, providing that a witness may be impeached, but not by evidence of particular wrongful acts, except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony, a witness may not be impeached by being asked and required to answer the question "Are you the boy that is under parole?"

8. Criminal Law—Incriminating Remark—Opportunity to Explain—Evidence.—Where, in a criminal prosecution, a witness for the Commonwealth testifies to a certain remark made by the defendant and the defendant is subsequently put on the stand and asked if he made the remark, the court should not conclude the matter by requiring the defendant to answer either yes or no without giving him an opportunity to give the exact conversation which he claims took place.

9. Criminal Law—Witnesses—Impeachment.—Where the Commonwealth seeks to impeach a witness by showing that his testimony before a coroner's jury, which was not reported by a stenographer, was different from that when he testified the next day in the presence of a stenographer, evidence of a member of the coroner's jury as to what the witness did say when no stenographer was present was improperly rejected.

10. Criminal Law—Res Restae—Evidence.—Where, in a prosecution of several defendants for murder, one of the defendant's immediately after the deceased is shot picks up the latter's pistol and fires at another, such act is admissible in evidence against such defendant as part of the res gestae, but is not admissible against the other defendants.

11. Criminal Law—Appeal and Error—Scope and Extent of Review—Selection of Jury.—The action of the trial court in selecting the jury from an adjoining county in a criminal prosecution is not subject to review.

YOST & FRANKLIN, GORDON & GORDON & MOORE, BOUR-LAND & BLACKWELL and HUNT & BENNETT for appellants.

JAMES BREATHITT, SR., M. M. LOGAN, Attorney General, and CHARLES H. MORRIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In the month of January, 1916, K. H. Keach was appointed marshal of the town of Dawson. In the month of

July following he was shot and killed by Mack Logan, who, together with D. F. Tribble and Buck Ferguson, was indicted for murder. The indictment charged a conspiracy on the part of the defendants to murder Keach, and that they did murder him pursuant to, and during the existence of, the conspiracy. The indictment further charged Logan as being the principal in the commission of the murder and Tribble and Ferguson as being aiders and abettors. On a joint trial before a jury Ferguson was acquitted and Logan and Tribble found guilty of voluntary mansalughter. Logan's punishment was fixed at eighteen years' and Tribble's at three years' confinement in the penitentiary. Judgment was entered accordingly and Logan and Tribble appeal.

In view of there being no claim on the part of the defendants that the evidence was not sufficient to take the case to the jury, a brief statement of the facts is all that will be required.

The homicide occurred under the following circumstances: K. D. Rogers went before J. R. Franklin, a justice of the peace of Hopkins county and of the district in which Dawson Springs is situated, and had a warrant issued for K. H. Keach, charging him with a breach of the peace alleged to have been committed by striking Rogers with his pistol while Rogers was a prisoner in his charge. It appears that before the warrant was obtained Jim Williams, who conducts a restaurant in the town of Dawson, had a son who had been arrested by Keach for running an automobile without a license. When he was arraigned before the police court the city attorney demanded a jury, which was denied by the court. Thereupon the city attorney dismissed the case without prejudice. Shortly after the dismissal of the case, Jim Williams, Frank Tribble and Mack Logan were seen near Hay's store. Logan was in the machine and Tribble was standing by the machine. Jim Williams, his son, and Mack Logan went away in the car and stopped at the house of K. D. Rogers. After being there a short time in close conversation they started to Buhla. Williams' purpose it is claimed was to surrender his son to Squire Franklin and have him fined for running his automobile in Dawson without a license. Rogers' purpose was to swear out a warrant against Keach for assault. Logan, who had been away from home for some time, claims that he joined the party for the purpose of calling on his parents. Squire Franklin lived seven or

eight miles from Dawson. As soon as the warrant was issued Rogers went to a sawmill, where Ferguson, the constable of that district, was engaged and delivered the warrant to Ferguson. He then went with Ferguson to the latter's home and waited until Ferguson changed his clothes. On the way back Rogers and Ferguson stopped at Rogers' house, while Williams and Logan went into town. Later on Ferguson went to the restaurant of Williams'. There Ferguson found Logan and summoned him to act as one of a posse to assist in the arrest of Keach. Logan said: "I don't think Rogers is a proper party to act." Ferguson insisted that he was and suggested to Logan the importance of getting a pistol, which Logan proceeded to do. About this time defendant Tribble appeared, and Ferguson summoned him to act as a member of the posse. Tribble claims that he did not think it necessary for the constable to have a posse, but went along with no intention to do any wrong. About this time Keach was seen in front of Hamby's well. As the posse approached Keach, Ferguson was walking with Tribble, while Rogers and Logan were together. Tribble passed a little beyond Keach, while Logan took the position to Keach's left. Ferguson stopped in front of Keach and told him that he had a warrant charging him with a breach of the peace. Keach demanded that the warrant be read. Ferguson then put on his glasses and read the warrant. Ferguson then told Keach to give up his pistol until the matter was settled. Keach stepped back and pulled his pistol from its holster. The evidence for the Commonwealth is to the effect that at this stage of the proceeding Rogers fired at Keach and missed him. Thereupon, Keach fired at Rogers and killed him. The evidence for the defendant is that Keach fired first. At this point Tribble grabbed Keach from behind and caught hold of the pistol. At the same time Ferguson also caught hold of the pistol. While they were struggling Logan placed his pistol to Keach's head and killed him. The evidence for the defendants is that Keach was attempting to fire the pistol all the time and that Ferguson, the constable, asked for help in order that he might not be killed, whereupon Logan fired in order to prevent anybody else being killed by Keach. When Logan fired, Keach, who was a powerful man, had gotten the pistol almost in a position to kill Ferguson.

It was the theory of the Commonwealth that the warrant for Keach's arrest was not obtained in good faith

and was not given to Ferguson to be executed in good faith, but merely to give an opportunity to the members of the alleged conspiracy to murder Keach in pursuance of the conspiracy which they had theretofore formed. In addition to other circumstances tending to support this theory, the Commonwealth introduced several wit- nesses who testified to conversations with each of the de- fendants, wherein they used language amounting to threats against Keach or showing their hostility towards him. The evidence for the defendants tended to show that none of them had any previous malice towards Keach and that they had not conspired to kill him; that Ferguson attempted to execute the warrant and, in good faith, summoned Logan, Tribble and Rogers to assist him in making the arrest.

The trial court gave several instructions. Instructions 1 and 2 bear on the question of conspiracy. Instruction No. 3 authorized the jury to find Mack Logan guilty, even though there was no conspiracy, if they believed from the evidence beyond a reasonable doubt that Mack Logan willfully shot and killed Keach, and further told the jury that they should find him guilty of murder if the shooting was done with malice afore- thought, or guilty of voluntary manslaughter if the shoot- ing was not done with malice aforethought but done in sudden affray or in sudden heat and passion. These three instructions are not complained of.

Instruction No. 4 is as follows:

"The court further instructs you that if you do not believe from the evidence beyond a reasonable doubt that the defendants, Frank Tribble and Buck Ferguson, or either of them conspired, confederated and banded to- gether or with Mack Logan and K. D. Rogers, but do believe from the evidence beyond a reasonable doubt that the defendant, Mack Logan, shot K. H. Keach, from which shooting he presently died, and at said time the defendants, Frank Tribble and Buck Ferguson, or either of them were present and willfully aided, abetted, ad- vised, counseled or encouraged the said Logan to so shoot and kill the said Keach, you will find them guilty or such one of them guilty as you so believe so aided, abetted, advised, counseled or encouraged him; guilty of willful murder if said aiding, abetting, advising, coun- seling or encouraging was done with malice afore- thought; guilty of voluntary manslaughter if said aiding,

abetting, advising, counseling or encouraging was done not with malice aforethought, but in sudden affray or in sudden heat and passion and upon provocation ordinarily calculated to excite passion beyond control. If you find them or either of them guilty, you will fix the punishment as is set out in the instructions Nos. 1 and 3.''

Instruction No. 5 defines the words ''willfully,'' ''with malice aforethought,'' and ''conspiracy'' and is not subject to complaint.

By instruction No. 6 the court told the jury, in substance, that defendant Ferguson had the right, and it was his duty, to serve the warrant by arresting Keach, provided he was not a party to a conspiracy to kill Keach and received the warrant for execution in good faith, and that he had the right, in the exercise of a reasonable judgment and good faith, to command and deputize the defendants Logan, Tribble and Rogers, to assist him in making said arrest, provided they were not members of a conspiracy to kill Keach and that they acted in good faith. He further set out the circumstances under which the jury could acquit the defendants, if they believed from the evidence that the defendants acted in the necessary, or apparently necessary, defense of themselves or of each other. There was added to this instruction, however, the qualification that the jury could not acquit any of the defendants on this ground if they believed as in instruction No. 7.

The most serious error in the instructions occurs in instruction No. 7, which is as follows:

''You are further instructed that if you believe from the evidence in this case beyond a reasonable doubt that the defendants were parties to a conspiracy, confederation or banding together formed for the purpose of taking the life of the said K. H. Keach and that in pursuance of such conspiracy, confederation or banding together and while same existed defendants went to the place where the said Keach was for the purpose of killing him, and the defendant, Mack Logan, did then and there kill him pursuant to and in execution of such conspiracy, confederation and banding together, then in that event you will not acquit defendants or any of them whom you so believe conspired, confederated and banded together on the ground of self defense or defense of another or apparent necessity; and the court further instructs you that if you believe from the evidence beyond

a reasonable doubt that K. D. Rogers first began the difficulty by shooting K. H. Keach or by making a demonstration as if to shoot the said Keach, then also in that event you will not acquit the defendants or any of them on the ground of self defense or defense of another or apparent necessity as set out in instruction No. 6.''

It will be observed that this instruction, after submitting to the jury the question of conspiracy, adds the following: ''   .   .   .   . ; and the court further instructs you that if you believe from the evidence beyond a reasonable doubt that K. D. Rogers first began the difficulty by shooting at K. H. Keach or by making a demonstration as if to shoot the said Keach, then also in that event you will not acquit the defendants or any of them on the ground of self defense or defense of another or apparent necessity as set out in instruction No. 6.'' It is argued for the Commonwealth that the concluding portion of the instruction should be read in connection with the first part of the instruction, and that when so read the jury were required to believe, not only that Rogers fired the first shot, but that the shot was fired pursuant to the conspiracy referred to in the first part of the instruction. In our opinion, however, this is not the natural meaning. The employment of the words ''and the court further instructs you that if you believe from the evidence,'' etc., and also of the words ''then also in that event you will not acquit,'' etc., very clearly shows that the concluding part of the instruction presented another state of case in which the jury should not acquit on the ground of self defense, or defense of another, and that this state of case was entirely independent of the question of conspiracy referred to in the first part of the instruction. Cases may arise, of course, where one acts at his peril in going to the assistance of another, who, by beginning the difficulty by firing the first shot, has deprived himself of the right of self defense, but no such case in here presented. Rogers was dead before Keach was killed. The defendants did not claim that they were acting in defense of Rogers, but merely in defense of themselves and those acting in concert with them. If, therefore, Ferguson was acting in good faith in executing the warrant, and the other defendants were in good faith summoned to assist him and in rendering such assistance were acting in good faith, and there was no conspiracy, the mere fact that Rogers, who was not present through any collusion with them, precipitated the difficulty by

first firing at Keach, did not deprive them of the right to defend themselves, or each other, if they subsequently had reasonable grounds to believe, and did believe that they, or those acting in concert with them, were in danger of death or great bodily harm at the hands of Keach. Clearly, the latter part of the instruction was erroneous and of such a prejudicial character as to require a reversal. On another trial it should not be given, either in its present form or with the additional qualification requiring the jury to believe in the existence of a conspiracy. Our reason for so holding is that if there was a conspiracy between the defendants, and Keach was killed pursuant to that conspiracy and while it existed, the defendants were guilty whether Rogers fired the first shot or not; and to require the jury, under these circumstances, to believe that Rogers fired the first shot, would require them to believe in the existence of a fact not necessary to sustain a conviction.

While on the subject of instructions, we may add that instruction No. 4 above set out does not conform to the rulings of this court and is, therefore, subject to criticism. Gambrell v. Commonwealth, 130 Ky. 513, 113 S. W. 476. By that instruction the jury were authorized to find the defendants, Tribble and Ferguson, guilty as aiders and abetters, if the jury believed from the evidence beyond a reasonable doubt that the defendant, Mack Logan, "shot K. H. Keach, from which shooting he presently died." In other words, their guilt as aiders and abettors is made to depend on the sole fact that Logan shot and killed Keach, regardless of whether his act in so shooting and killing him was justifiable or not. On another trial the court, in lieu of instruction No. 4, will give the following instruction:

"4. The court further instructs you that if you do not believe from the evidence beyond a reasonable doubt that the defendant, Frank Tribble, conspired with Mack Logan, K. D. Rogers and Buck Ferguson, or either of them to kill K. H. Keach, but do believe from the evidence beyond a reasonable doubt that the defendant, Mack Logan, willfully and feloniously shot and killed K. H. Keach, not in the necessary, or to him apparently necessary, defense of himself, or of said Tribble or said Ferguson, and that the defendant, Frank Tribble, was present and willfully and feloniously aided, abetted, advised, counseled or encouraged said Logan to shoot and kill the said Keach, you will find said Tribble guilty;

guilty of willful murder, if you shall believe from the evidence beyond a reasonable doubt that such shooting and killing of Keach, or such aiding and assisting, were done with malice aforethought; or guilty of voluntary manslaughter, if you shall believe from the evidence beyond a reasonable doubt that such shooting and killing of Keach, or such aiding and assisting, were done in sudden heat and passion, or in sudden affray, and without previous malice."

In view of the reversal of the judgment, we deem it necessary to call attention to other errors, which, though not perhaps sufficient of themselves to authorize a reversal, should be avoided on another trial.

Under our statute, it is the mandatory duty of a person summoned by an officer to assist in making an arrest to render such assistance. Criminal Code, section 41; Kentucky Statutes, section 1340. By instruction No. 6, the jury were told, in substance, that the defendants, Logan, Tribble and Rogers, in obedience to the command of the constable, had the right to assist the said constable in making said arrest, provided they were not members of the conspiracy aforementioned. The court should further qualify this instruction by telling the jury that it was their duty, under such circumstances, to assist said Furguson in making said arrest.

The evidence of H. G. Hamby to the effect that during the difficulty he heard his brother cry out "Don't shoot that man," should not have been admitted. The witness's brother was not a participant in the difficulty, but a mere bystander. Cries or exclamations of persons in no way connected with the main fact are not admissible in evidence as part of the *res gestae*. Bradshaw v. Commonwealth, 73 Ky. 576.

America Lovelace testified to a threat made by the defendant, Mack Logan, against Keach. The defense endeavored to impeach this witness by offering evidence to the effect that her reputation for chastity and virtue was bad. Under the well settled rule in this state, such evidence should have been admitted. Lane v. Commonwealth, 134 Ky. 519.

Addie Wyatt testified that shortly before Keach's death she heard Logan make the statement that if Mr. Rogers did not get him in two or three years after he got out, he (Logan) would get him. On being asked

whom Logan referred to she replied: "I don't know who it was; I never paid any attention." Cases may arise where a threat is admissible, even though the person threatened be not mentioned. In such a case, however, the surrounding circumstances should be sufficient to identify the person threatened. Here the witness testified to no fact from which it could be reasonably inferred that the threat made by Logan was directed at Keach. Since, under these circumstances, the identity of the person threatened was too vague and uncertain, we conclude that the alleged threat should not have been received in evidence.

When Lloyd Hammond, a witness for the defendants, was on the stand, the court permitted the Commonwealth's attorney to ask him the question: "Are you the boy that is under parole," to which the witness replied, "Yes, sir." Our code provides that a witness may not be impeached by evidence of particular wrongful acts, except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony. Civil Code, section 597. Construing this section, it has been frequently held that it is not competent to impeach a witness by evidence of, or to ask him as to, particular acts or crimes or as to whether or not he has been indicted, but it is proper to ask him if he has been convicted of a felony. Hayden v. Commonwealth, 140 Ky. 634, 131 S. W. 521. Here the witness was not asked if he had been convicted of a felony, but it was sought, by indirection, to show that he had been charged with some particular crime. We, therefore, conclude that the witness should not have been required to answer the question.

Jim Robinson, a witness for the Commonwealth, testified that immediately after the killing the defendant Logan came into Williams' restaurant and said to Bob Mason: "Bob, fetch me a double-barreled shot gun, I am going to shoot the first son-of-a-bitch's brains out that comes upstairs after me." While the defendant Logan was on the stand he was asked if he made the statement to Mason, and answered: "No, sir, I did not say that." He was then asked the question, "What did you say?" An objection by the Commonwealth was sustained. The defendants excepted and avowed that witness, if permitted to answer, would say: "I told Mason I wanted to give up; he never let on like he heard me, but was

fooling with some glasses there about the water; then I walked up closer and I says Bob, is there a shot gun in here, and he said no, not that I know of, and I says I am going upstairs, send somebody upstairs for me to give up to.'' This statement was improperly excluded. The matter should not have been concluded by requiring the witness to answer either yes or no. He should have been permitted to give the exact conversation which took place on the occasion in question. Hart v. Commonwealth, 22 R. 1183.

It is sought to discredit the testimony of Ferguson by showing that his evidence before the coroner's jury on the night of the killing, which was not taken by a stenographer, was different from that which he gave on the following morning when a stenographer was present. Thereupon the defendants introduced a member of the coroner's jury, but the court declined to permit the witness to tell what Ferguson's testimony was on the disputed point before the coroner's jury on the night of the killing. This testimony was admissible for the purpose of showing that there was no inconsistency in his testimony, and the court should have permitted the witness to answer.

It is insisted that the court erred in permitting J. D. Bittick to testify that immediately after Keach was shot the defendant Tribble picked up Keach's pistol and shot at witness. It seems to us that Tribble's act, which immediately followed Keach's death, was so closely connected with the main fact as to constitute a part of the same transaction, and such act was, therefore, admissible as part of the *res gestae.* However, the trial court properly admonished the jury that such evidence was admissible against Tribble and not against the other defendants.

The action of the trial court in selecting the jury from an adjoining county is not subject to review. Sergent v. Commonwealth, 133 Ky. 284, 117 S. W. 362.

Judgment reversed and cause remanded for a new trial consistent with this opinion.