## Thacker v. Commonwealth.

(Decided March 6, 1936.)

98

C. A. NOBLE and J. M. DIXON for appellant.

BAILEY P. WOOTTON, Attorney General, H. HAMILTON RICE, Assistant Attorney General, and J. A. SMITH, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

By a shot from a shotgun in the hands of Willie Thacker his wife was killed on January 8, 1935. For this he was charged by indictment with murder, was convicted of voluntary manslaughter, and his punishment fixed at twenty-one years' confinement in the penitentiary.

On November 9, 1934, Willie Thacker, aged twenty-two, in Harlan county married Beatrice Reynolds, age seventeen of that county. She had been reared in a Baptist Orphans' Home near Louisville, was a daughter of Henry Reynolds of Harlan county, and for some unexplained reason is frequently referred to in this record as "Dorothy Thacker."

These young people appear to have been poor, honest and respectable. They made their home at a place called Indian Head, where the husband had employment in a coal mine and they were apparently happy. Having lost his position there, they went in

the late afternoon of January 8th to the home of Elizabeth Grubbs, a first cousin of Willie Thacker, and with whom they expected to spend a few days. This was a distance of about one and a half miles. They walked and Thacker carried a sack of coal to Mrs. Grubbs. It was dark when they arrived.

### The Trip Back to Indian Head.

Thacker is a handy man with tools, and at this Grubbs home he found some material out of which to make some chairs, so, as he says, they went back to Indian Head to get some chair materials he had there and his tools. They also got a shotgun which Thacker testifies he was going to fix for George Walker. At one place in the evidence Thacker said he got a gun he had fixed for a fellow, but at fifteen other places he speaks of it as a gun he was going to fix. Mrs. Grubbs and Thacker testify that he and his wife left together. Lawrence Combs testifies Mrs. Thacker left five minutes in advance of her husband. The callousness of Combs in leaving after Mrs. Thacker was shot, without offering to render aid, is not calculated to add to the credibility of his testimony.

### The Return and the Shooting.

They returned about 11 p. m. or a little later. The time of their return is a bit uncertain, but Charley Miles testified the moon was shining brightly, so on the next trial the use of an almanac will fix this time or else seriously affect the testimony of Miles. They put the tools in an outhouse and entered the Grubbs home together, smiling and grinning so Mrs. Grubbs testifies, but quarreling so Lawrence Combs testifies. The shotgun was placed in the corner, and with that hospitality characteristic of the poor, Mrs. Grubbs removed the mattress from her bed and placed it on the floor to make a pallet for her guests. This done, Mrs. Thacker retired upon this pallet, Mrs. Grubbs busied herself in rearranging the bed from which the mattress had been taken so that it could be used for the night, and while she was so engaged, Thacker, having got the shotgun from the corner, was seated with Lawrence Combs upon a child's crib near his wife as she lay on the pallet and was endeavoring to fit it with what he calls a "break spring," when in moving it about he struck the child's bed with it, the gun was discharged, and Mrs. Thacker's right arm was almost shot in two

between the elbow and the shoulder, We will try to illustrate this, and to show the outline of the room, the position of the occupants, the location of some of the furniture, and the position of this pallet and Mrs. Thacker as she lay upon it.

The beds and the pallet were grouped around the stove and Thacker was seated practically at his wife's feet as she lay on the pallet. Mrs. Thacker screamed that her arm was shot, Thacker pulled back the cover, saw the wound, fell on his knees, began praying, and called to Lawrence Combs to get an ambulance. Combs left and did not return. If he called an ambulance, none came. As the ambulance did not come at once, Thacker soon left and ran frantically from place to place to get to a telephone that he might call an ambulance. He returned with one, went in it to the hospital with his wife, and remained with her and assisted in her care until he was arrested the next morning. At the time of the shooting, Mrs. Grubbs had her back turned, she was rearranging the bed and hence did not see the shooting. Combs was looking out the window, so he says, and did not see it.

### The Commonwealth's Theory.

The theory of the commonwealth is that the deceased had been endeavoring to escape from her husband, that for that reason she had run away from the Grubbs home and had come to the home of Charley Miles and had never started or gone to Indian Head. She stayed at the Miles home a few minutes, then she went to the home of Wade Murphy, where Marie Fu-

gate testified she found her sitting crying when she came in, that soon she retired and Mrs. Thacker retired.

Later Thacker came with a shotgun, looking for her; that when he discovered her in bed he, so they say, seized her by the hair and said, "Come out of there you—— whore, and go with me, your time is short, I am going to kill you when I get you to the hoglot," etc. George Henson testifies he lived beneath Murphy and heard some one up there about 9 o'clock cursing and going on and heard him say, "It's my wife, I will do as I please, I'll kill her before daylight." He says that as they left he heard a shot fired. Mary Henson testified to hearing some one there, but did not testify to anything he said or did, or to the shooting. Wade Murphy testifies to practically the same things as Marie Fugate had, but adds that when they left Thacker shot into the floor.

The next house they passed was that of Charley Miles. He, his wife, and Stella Barnett testify that as Thacker and his wife came up the road he was flailing her with the shotgun, kicking her, and using vile and abusive language towards her. Charley Miles says he opened the door and standing in the doorway with his hand on the door facing, told Thacker to stop using such language, whereupon Thacker shot at him, so Miles says, and although he was in the doorway and the shot struck both sides of the door, no shot hit him, and that still beating his wife with the shotgun they went on up the road. The failure of those who saw her body later to find bruises thereon seriously affects this evidence.

### Thacker's Account.

Thacker denies all this, and to support him, introduced three witnesses who met and talked with him and his wife on their return from Indian Head about fifteen minutes, late that night about fifty feet from the Grubbs home, they testify that they were then in perfect good humor and in about thirty minutes a man in a car overtook these witnesses, picked them up, and told them of the shooting. If Thacker had wanted to kill his wife, he certainly had abundant opportunity to do so while on this trip to Indian Head and back in the dark.

### Grounds for Reversal.

Alleged errors in ruling on the testimony are not

of sufficient moment to merit discussion further than to say that evidence of what Mrs. Thacker is alleged to have said previous to the shooting and when her husband was not present should not have been admitted, and since there must be another trial, we will add that Marie Fugate should have been required to answer questions relative to her relations with Wade Murphy and other evidence concerning that relation should have been admitted, the court admonishing the jury it is admitted solely for the purpose of affecting her credibility and his credibility as witnesses if it does affect that.

A witness may be impeached in this state by showing the general reputation of the witness for morality, chastity etc. 70 C. J. 842, sec. 1049, Logan et al. v. Com. 174 Ky. 80, 191 S. W. 676, Cavanaugh vs. Com. 172 Ky., 199, 190 S. W. 123, and Lane vs. Com., 134 Ky., 519, 121 S. W. 486. In establishing that reputation witnesses can not be asked about specific acts and the interrogation must be confined to the general reputation of the witness but in the cross-examination of the witness as here the witness can be asked about particular acts or facts. 70 C. J. p. 875, sec. 1094, and the witness must answer unless the witness shall claim the privilege of not answering because such answer would tend to incriminate the witness, but unless such privilege is claimed the witness should be required to answer.

### The Verdict and the Evidence.

There were five people in this room when this shooting occurred, Mr. and Mrs. Thacker, Lawrence Combs, Mrs. Grubbs, and her thirteen year old son, Joe Grubbs who was asleep in this child's bed behind Thacker and Combs, hence did not see the shooting.

We have stated what Mr. Thacker said about it. He does not say he intentionally shot his wife and thus his case is unlike that of Simmons v. Com., 207 Ky. 570, 269 S. W. 732, where Simmons, having admitted the intentional shooting of Dugard, we said he had to come forward with evidence to excuse his act. Thacker's account of this shooting is that it was accidental. The commonwealth may convict Thacker of this killing, if it can, by evidence to show that it was intentionally done or that it was the result of such reckless or grossly careless use or handling of this gun as to make this a homicide by culpable negligence. See 29 C.

J. p. 1154, sec. 141, and the following cases from this court: Golliher v. Com., 2 Duv. (63 Ky.) 163, 87 Am. Dec. 493; Sparks v. Com., 3 Bush. (66 Ky.) 111, 96 Am. Dec. 196; Chrystal v. Com., 9 Bush. (72 Ky.) 669; Barnard v. Com., 8 Ky. Opin. 764; Minton v. Com., 79 Ky. 461; Ellison v. Com., 12 Ky. Opin. 665; Walls v. Com., 12 Ky. Opin. 687; York v. Com., 82 Ky. 360; Com. v. Matthews, 89 Ky. 287, 12 S. W. 333, 11 Ky. Law Rep. 505; Embry v. Com., 12 S. W. 383, 11 Ky. Law Rep. 515; Smith v. Com., 93 Ky. 318, 20 S. W. 229, 14 Ky. Law Rep. 260; Murphy v. Com., 22 S. W. 649, 15 Ky. Law Rep. 215; Henderson v. Com., 72 S. W. 781, 24 Ky. Law Rep. 1985; Messer v. Com., 76 S. W. 331, 25 Ky. Law Rep. 700; Montgomery v. Com., 81 S. W. 264, 26 Ky. Law Rep. 356; Messer v. Com., 85 S. W. 722, 27 Ky. Law Rep. 527; Brown v. Com., 122 Ky. 626, 92 S. W. 542, 28 Ky. Law Rep. 1335; Messer v. Com., 90 S. W. 955, 28 Ky. Law Rep. 920; Blanton v. Com., 103 S. W. 329, 31 Ky. Law Rep. 800; Ewing v. Com., 129 Ky. 237, 111 S. W. 352, 33 Ky. Law Rep. 749; Smith v. Com., 133 Ky. 532, 118 S. W. 368; Lewis v. Com., 140 Ky. 652, 131 S. W. 517; Hunn v. Com., 143 Ky. 143, 136 S. W. 144; McGeorge v. Com., 145 Ky. 540, 140 S. W. 691; Pash v. Com., 146 Ky. 390, 142 S. W. 700; Speaks v. Com., 149 Ky. 393, 149 S. W. 850; Wayne, Alias Wing v. Com., 154 Ky. 698, 159 S. W. 548; Held v. Com., 183 Ky. 209, 208 S. W. 772; Terrell v. Com., 194 Ky. 608, 240 S. W. 81; Davis v. Com., 193 Ky. 597, 237 S. W. 24, 23 A. L. R. 1551; Lambdin v. Com., 195 Ky. 87, 241 S. W. 842; Eastridge v. Com., 195 Ky. 126, 241 S. W. 806; Clem v. Com., 198 Ky. 486, 248 S. W. 1036; Jones v. Com. 200 Ky. 65, 252 S. W. 130; Rowe v. Com., 206 Ky. 803, 268 S. W. 571; Holcomb v. Com., 207 Ky. 372, 269 S. W. 349; Jones v. Com., 213 Ky. 356, 281 S. W. 164; Rains v. Com., 226 Ky. 173, 10 S. W. (2d) 643; Haupe v. Com., 234 Ky. 27, 27 S. W. (2d) 394; Embry v. Com., 236 Ky. 204, 32 S. W. (2d) 979; Garrison v. Com., 236 Ky. 706, 33 S. W. (2d) 698; Hill v. Com., 239 Ky. 646, 40 S. W. (2d) 261.

The appellant was convicted of voluntary manslaughter, which means this jury believed one or the other of the following states of fact:

(a) That Thacker willfully, feloniously, and intentionally shot his wife under provocation ordinarily calculated to excite passion beyond control or,

(b) That Thacker had no desire, thought, or intention of harming his wife, but when he knew or by ordinary reason should have known that it was dangerous to human life to handle this gun as he was doing, he without regard for consequences or for the safety of others continued, and as a result of his wanton, reckless, and grossly careless handling of the gun it was discharged and his wife was thereby killed.

There was no evidence on which this jury could have convicted Thacker under proposition (a) for not a witness testifies, nor are there sufficient circumstances to show, he intentionally shot his wife. Reason would indicate he did not do so for as he sat on this bed the muzzle of this gun was within thirty inches of her heart and if he had intended to kill her he would have shot her not in the arm but in some vital organ.

Before the jury could convict him under proposition (b), it was necessary for the jury to believe Thacker knew this gun was loaded for a really unloaded gun is not dangerous.

Thacker testified he did not then know this gun was loaded, but that it was loaded is a demonstrated fact, and if the jury believed from the evidence he fired this gun at Murphy's home and at Miles' home and as he had had it in his possession since, the jury may have inferred he had reloaded it, and if he did, he knew it was dangerous.

This case is so much like the cases of Peay v. Com., 181 Ky. 396, 205 S. W. 404, Stewart v. Com., 235 Ky. 670, 32 S. W. (2d) 29, and Davis v. Com., 204 Ky. 809, 265 S. W. 316, as to make it difficult to distinguish it from them, and whether in view of them this verdict is supported by the evidence or is the result of passion and prejudice is a question we reserve and upon which we express no opinion now.

### Newly Discovered Evidence.

Among the grounds on which he sought a new trial is the statement of Dr. J. P. Boggs as to what Mrs. Thacker told him.

This is not available for reversal as Thacker did not file his own affidavit that he first discovered this after the trial. See Oakley v. Com., 158 Ky. 474, 165 S. W. 691. If upon the next trial it be shown this was

told the doctor under such circumstances as to make it. a dying declaration, Thacker can get the benefit of it.

## Instruction.

Appellant complains of instruction No. 3, which was the one under which he was convicted, but it apparently follows the instruction No. 2 in Garrett v. Com., 215 Ky. 484, 285 S. W. 203, and was a correct. statement of the applicable law.

## Misconduct of Commonwealth's Attorney.

From the bill of exceptions it is shown that in his. argument the attorney for the commonwealth was permitted, over Thacker's objections and exceptions, to say: "Gentlemen of the jury, Joe Reed testified that. the defendant and the deceased came to his house and lived together as man and wife," also, "Gentlemen of the jury, the defendant was insanely jealous and killed the deceased because he was jealous of her."

There was no evidence to warrant the use of that language. Joe Reed did not so testify and no evidence of jealousy appears anywhere. When the accused objected to these remarks that sharply called them to the jury's attention, and when the court overruled appellant's objection, that action tended to fix those remarks in the minds of the jury, as having actually been testified to, and the result was calculated to seriously affect the substantial rights of the accused, and for this reason he is now awarded a new trial and the judgment is reversed.