THE STATE, DEFENDANT IN ERROR, v. DAVID H. BRAND
AND JOHN BRAND, PLAINTIFFS IN ERROR.

Argued November 18, 1908—Decided March 1, 1909.

1. In charging a statutory offence, it is in general sufficient to lay
the charge in the words of the act, without a particular state-
ment of facts such as will bring the accused within its opera-
tion.

2. An indictment under *Pamph. L.* 1898, *p.* 829, § 126, charging that
the defendants did "willfully and maliciously aid, counsel, pro-
cure and consent to the setting fire to and burning of certain
goods, &c., which at the time were insured against loss or damage
by fire, with intent to prejudice" certain insurance companies
mentioned—*Held* sufficient, without any more specific averment
that a fire actually occurred.

3. Evidence that the defendants, or one of them (they both being
interested as stockholders and otherwise in the corporation whose
goods were insured and burned), consented to a settlement with
the insurance companies of the fire loss upon a basis of one-half
the adjusted amount of the loss—*Held*, admissible (among other
reasons) as tending to show a guilty mind on the part of the
defendant or defendants.

4. Where the state of mind of a third person upon a certain occasion
was under inquiry, and the conduct of such person, including ex-
clamations and declarations on the same occasion, was properly
admissible to show that state of mind—*Held*, that the fact that
the declaration happened to embody a statement of fact, respect-
ing which it amounted to but hearsay evidence, did not render the
admission of the declaration erroneous, and that the proper course
was for counsel to request the trial judge to instruct the jury that
the declaration was not legal evidence of the fact declared, and
was to be considered only as evidence of the state of mind of the
declarant.

On error to the Supreme Court, whose opinion is reported
in 47 *Vroom* 267.

For the plaintiffs in error, *John H. Backes* and *Gilbert
Collins*.

For the state, *William J. Crossley*, prosecutor of the pleas,
and *William R. Piper*, assistant prosecutor.

The opinion of the court was delivered by

PITNEY, CHANCELLOR.   The defendants were convicted in the Mercer Quarter Sessions upon an indictment charging that they did willfully and maliciously aid, counsel, procure and consent to the setting fire to and burning of certain goods, wares and merchandise, which at the time were insured against loss or damage by fire, with intent to prejudice certain insurance companies mentioned in the several counts of the indictment.   The Supreme Court upon error affirmed the conviction, and the defendants have sued out writs of error from this court.

It is argued here that defendants are charged as accessories before the fact, and that the indictment is defective in failing to accuse the principal offender.   The common-law requirement that an indictment against an accessory should allege with particularity the commission of the principal offence, naming the offender, was highly technical and troublesome in its operation, and never obtained except with respect to felonies.   The offence of which these defendants were convicted is a statutory offence (*Pamph. L.* 1898, *p.* 829, § 126), and is made by the statute a misdemeanor, and not a felony.

The general rule is well established that in charging a statutory offence it is sufficient to lay the charge in the words of the act, without a particular statement of facts such as will bring the accused within its operation.   *State* v. *Thatcher,* 6 *Vroom* 445; *Gardner* v. *State,* 26 *Id.* 17, 23; *State* v. *Bartholomew,* 40 *Id.* 160, 164.

But upon the language of the particular section it is insisted —*first,* that it is at least necessary to allege that a fire was in fact set; and *secondly,* that the present indictment contains no such allegation.

Section 126 reads as follows: "Any person who shall willfully or maliciously set fire to or burn, or aid, counsel, procure or consent to the setting fire to or burning of any building, ship or vessel, or any goods, wares, merchandise or other chattels, which shall at the time be insured by any person or corporation against loss or damage by fire, with intent to prejudice any person or corporation that has underwritten or shall

underwrite any policy of insurance thereon, whether the same be the property of such person or any other, shall be guilty of a high misdemeanor."

It is argued that since the several offences of burning, or aiding, procuring or consenting to the burning, contain each in itself the notion of an actual fire, the remaining word—"counsel"—as used in the statute, must upon the doctrine *noscitur a sociis* be so construed as to make such counseling an offence punishable criminally under the statute only where a fire has actually occurred.

The argument contains its own refutation; for if the several statutory terms—"aid, counsel, procure or consent to the setting fire to or burning of any building," &c.—when used with the disjunctive, mean that a fire has actually occurred, so that this meaning attaches to any one of the terms when separately employed, it results *a fortiori* that when the same terms are all used conjunctively they necessarily import an actual fire. And since this indictment avers that these defendants did aid, counsel, procure and consent to the setting fire to and burning of the merchandise in question, the indictment of necessity means (if the argument of counsel be sound) that the merchandise was in fact burned.

The remaining questions raised are based upon the conduct of the trial. The case came before the Supreme Court upon bills of exceptions taken under section 135 of the Criminal Procedure act (*Pamph. L.* 1898, *p.* 914), and also upon a certification of the entire record of the proceedings had upon the trial pursuant to section 136 of the same act. Numerous assignments of error and specifications of causes for reversal were presented to the Supreme Court, all of which were overruled, and this has resulted in more than one hundred assignments of error in this court. The questions are presented here under thirty-seven different heads or points, all of which have received our consideration. The only points that we deem it necessary to mention are the following:

The trial court admitted evidence showing that David H. Brand & Company brought numerous suits against the insurance companies, and that these were settled at the instance of

defendants or one of them, by agreement between the insured and the companies upon the basis of fifty per cent. of the adjusted loss. The Supreme Court deemed this evidence relevant for the purpose of proving the averment of the indictment that the property was insured, and that the burning thereof would prejudice the underwriters, and relevant also upon the question of the value of the property. We deem the evidence relevant upon both these grounds, and upon the further ground that the acceptance by way of compromise of one-half the admitted and adjusted amount of the loss was a circumstance tending to show a guilty mind on the part of the defendant or defendants; a fear that if they did not settle for less than the actual amount of loss the insurance companies would show that they had procured the fire to be set and thus defeat recovery entirely.

The evidence that seven or eight months before the fire invoices were stamped "paid" which were not in fact paid was clearly admissible as tending to show preparation for the fire. The argument is that the act was remote in point of time. But it cannot be said as matter of law to be so remote as to be irrelevant. The same remark applies to certain other matters of evidence that were objected to as irrelevant because of remoteness.

The Supreme Court found difficulty with the testimony of William Hartman as to a remark made by Miss Jamieson, one of the bookkeepers, when she opened the outer door of the safe on the evening after the fire, and, upon discovering that the key of the inner door was missing, exclaimed: "The key is gone; someone else has the combination besides me; someone else has been in this safe since I closed it last night at a quarter of eleven." The Supreme Court, dealing with this testimony of Hartman as hearsay so far as it recited Miss Jamieson's declaration, thought that for this reason the testimony should not have been admitted; but finding upon an examination of Miss Jamieson's testimony, given under oath upon the trial, that her evidence required the same inference which would be drawn from her remark testified by Hartman, it was held that

although there was error in the admission of the Hartman testimony, the error was harmless.

If the Hartman testimony was erroneously admitted, we are not clear that its admission was harmless.

In order to determine whether there was error in its admission, a brief recital of the previous testimony is necessary. About half-past two o'clock in the morning of Sunday, July 2d, 1905, fire was discovered in the department store of David H. Brand & Company (a corporation), situate in the city of Trenton. The fire was soon checked, and resulted in the burning of only a part of the stock of goods of the company. The circumstances clearly indicated an incendiary origin. During the same day certain employes of the company were examined by the prosecutor of the pleas at the court house, and among them Miss Jamieson. On Sunday evening, about half-past nine o'clock, Miss Jamieson, at the request of the prosecutor, went to the store, accompanied by Hartman (who was a captain of police), and by the prosecutor's detective, Munro, for the purpose of opening the safe. Hartman's testimony referred to the conduct of Miss Jamieson on that occasion. She herself had already testified that she opened the outer door of the safe in the presence of Hartman and Munro, found the key of the inside door was missing, closed the safe and returned to the prosecutor's office; that she did not remember whether she said anything to the men when she observed that the key was missing; that she might have said something, but did not remember what it was. She also testified that the store was dark at the time; that Hartman and Munro burned matches in order to afford a light; that she did not look around to see whether the key was elsewhere than in the door, or whether it had fallen down. There was also evidence leading to the inference that when the safe was afterwards opened certain books were found in it that were not in it at the time when it was locked on the Saturday night preceding the fire; among them a falsified invoice book which, according to the theory of the state, was made up at the instance of David H. Brand by way of preparation for the fire.

At the time of the fire David H. Brand was in Grand Rapids, Michigan, where he had been for about a week. John Brand and Miss Jamieson were in Trenton. John Brand was a small stockholder of the company, was its secretary, and was employed in some capacity in the store. David H. Brand was the principal stockholder, and also the president and general manager of the company.

There was evidence tending to show that David H. Brand, John Brand and Miss Jamieson, and they alone, had knowledge of the combination of the safe; and that Miss Jamieson closed and locked the safe on the Saturday evening shortly before eleven o'clock.

In this state of the evidence it was a legitimate inference that either John Brand or Miss Jamieson had opened the safe upon the eve of the fire for the purpose of putting into it fictitious documentary evidence which, in the event of the stock of merchandise being consumed by fire, would aid the corporation, David H. Brand & Company, in collecting insurance money upon a basis other than the actual value of the stock in trade.

In this juncture the state examined Captain Hartman as a witness concerning Miss Jamieson's conduct when the ineffectual effort was made to open the safe, with the purpose of showing that she manifested genuine surprise, not to say consternation, upon discovering that the key to the inner safe door was missing; and that her conduct was not that of a person who had herself opened the safe since the closing of it on the night before. Her exclamations were admitted in evidence as being a part of her conduct. It was not objected in the trial court, nor has it been argued either in the Supreme Court or in this court, that it was improper for the state to show Miss Jamieson's conduct on the occasion in question; nor that her exclamations and declarations were inadmissible as a part of her conduct. No exception was taken to this portion of Hartman's testimony, and the report of the trial shows that the learned counsel for the defendants conceded that Hartman's testimony was admissible with respect to what Miss Jamieson did, including the expressions used by her on that occasion as

descriptive of her conduct. Amongst her exclamations recounted by the witness was the following: "Where is the key? The key has gone. Someone else has been in the safe since I locked it last night at about a quarter of eleven." This was in answer to a question which was not objected to. Nor was there any motion to strike out the answer. Counsel for defendants did indeed say: "That statement by this witness is not admissible. That is where the line is drawn." To which the trial judge responded: "I don't know, let it stand."

Assuming, as we must, from the course of the trial, that Miss Jamieson's declarations at the time of the incident in question were admissible in evidence as a part of her conduct, they were none the less admissible because they happened to contain a declaration of her opinion or inference to the effect that someone else had entered the safe. The proper course to be pursued by counsel for the defendants was to request the trial judge to instruct the jury that the declaration was not of itself substantive evidence that another person had entered the safe, but was evidential only of the condition of mind of Miss Jamieson at the time the exclamation was made. No such request appears to have been preferred, the matter apparently being treated as of trifling consequence. But, as it happens, the trial judge in his charge to the jury did refer to this testimony of Hartman's with particular reference to the question whether Miss Jamieson's exclamation evinced a genuine surprise on her part at finding the key was missing.

In our opinion there was neither legal error nor "manifest wrong and injury to the defendants" in the admission of Hartman's testimony.

We find it unnecessary to add anything further to what is contained in the opinion of the Supreme Court.

The judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, BOGERT. VREDENBURGH, VROOM, GRAY, DILL, J.J.    12.

*For reversal*—MINTURN, J.    1.