## COMMONWEALTH *vs.* FRED J. DERRY.

Essex.    March 1, 1915. — May 19, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Burning Insured Property.    Accessory.    Evidence,* Competency.

At the trial of an indictment under R. L. c. 215, § 2, for being an accessory before the fact to the felony of burning the defendant's factory to defraud certain insurance companies in violation of R. L. c. 208, § 10, it appeared that the defendant's factory was equipped with a sprinkler system, and that after the fire it was discovered that sixty-three out of the two hundred and fourteen sprinkler heads of the system had been plugged with corks of the size ordinarily used in half pint bottles. It could have been found that the defendant had sufficient mechanical knowledge and skill to remove the heads, insert the corks and then restore the heads to their normal position, that he had ample although not exclusive opportunity to plug the heads, and that at the time of the fire the defendant was disheartened and was not averse to making a fire sale. There also was evidence that the defendant had a brother who was employed in the defendant's factory at the time of the fire and had been employed there for a number of years, and that at about six o'clock on the evening before the fire occurred this brother locked up the factory for the night. There was no other evidence to show the connection of this brother with the defendant's business or the intimacy of his relations to the defendant or his family. The presiding judge against the defendant's exception admitted evidence that a month or two before the fire the defendant's brother called at a certain store and asked the proprietor "if he could let him have a number of dozen of cork stopples, at the same time holding out a cork which he held in

his hand, said cork being the type ordinarily used in one half pint bottles," but that the proprietor had no corks of that size, and also evidence that in the month before the fire the defendant's brother bought at another store perhaps a dozen or two or three or four dozen "small corks for half pint or pint bottles." *Held,* that the evidence of the actual purchase of the corks by the defendant's brother was admissible as tending to show circumstantially that the defendant had the means and the opportunity of procuring without direct purchase corks of the kind used to stop the sprinklers; but that the admission of the evidence of the previous inquiry for such corks by the defendant's brother was error that required the sustaining of the defendant's exception, there having been no evidence to show that the defendant's brother knew the purpose for which the corks were to be used or that he in any way participated in their use or in setting the fire.

PIERCE, J.   The defendant was indicted in two counts charging him in the first count under R. L. c. 208, § 10, with burning his box factory in Danvers on November 22, 1911, to defraud certain insurance companies, and in the second count under R. L. c. 215, § 2, with being an accessory before the fact to such burning by a person to the jurors unknown. The defendant was acquitted as principal and was found guilty as accessory before the fact.*
The factory was equipped with a sprinkler system which might be operated in two ways, one by filling it with air which would be compressed by the pressure of the water behind it, and one by filling it with water.

After the fire it was discovered that of the two hundred and fourteen sprinkler heads of the system with which the factory was equipped sixty-three had been plugged with corks of the size ordinarily used in half pint bottles. The fire protective efficiency of the system manifestly was impaired in the proportion that the plugged heads bore to the whole number of heads. The fact of the plugging proved indubitably some one's purpose to destroy, at least in part, the shield which the system presented to the ravages of a possible fire.

There was testimony upon which the jury properly might have found that the defendant had sufficient mechanical knowledge and skill to remove the heads, insert the corks, and then restore the heads to their normal position. The testimony also would have justified a finding that of those connected with the defendant's business only two others, — Harris and Waugh, — understood the system and could have plugged the heads.

---

* The defendant alleged exceptions, which were allowed by *Keating,* J., before whom he was tried.

There was testimony upon which the jury might have found that the defendant had ample although not exclusive opportunity to plug the heads.

While it properly could not have been found that the property was over insured, it might have been found that for some good or bad reasons, or for no reason at all, the defendant was disheartened and not averse to making a fire sale. This fact, if found, established a motive for the defendant's alleged acts.

The Commonwealth strongly argues that the defendant and his brother, Frank Derry, had entered into a conspiracy to burn the defendant's box factory, and that the acts of the defendant and the acts of Frank Derry, in the purchase and attempts to purchase corks, were "directed toward a common object, namely, the object of making preparations for the fire and setting the fire." The short answer to this contention is that the defendant and Frank Derry were not, and so far as appears are not, under indictment as conspirators.

If the evidence had shown a conspiracy to burn, it is doubtful whether an indictment would lie after the commission in fact of the felony, and especially after the acquittal of one of the two alleged conspirators. To be an accessory before the fact the person incited, procured or commanded must become a principal in the commission of the contemplated crime as a result of the defendant's acts. As to Frank Derry, the only evidence offered by the government to show his connection with the defendant's business, or the intimacy of his relations to the defendant or to his family, was that he was a brother employed in his brother's factory at the time of the fire and for a number of years preceding; that at about six o'clock in the evening of November 21, 1911, he locked up the factory for the night, the fire occurring at 1.30 A. M. on November 22; and that upon occasions previous to the fire he had used a key in opening and closing the door of the storehouse. Without other testimony the government, against the objection of the defendant, was permitted to show that Frank Derry, in September or October, 1911, called at the store of one Ralph Wheelwright and asked Wheelwright "if he could let him have a number of dozen of cork stopples, at the same time holding out a cork which he held in his hand, said cork being the type ordinarily used in one half pint bottles,"

but that Wheelwright had no corks of the required size on hand. This testimony, which was given by one Collins, a clerk in the store of Wheelwright and by Wheelwright himself, in the absence of any evidence tending to show a common purpose or that Frank Derry was acting at the request of the defendant, was inadmissible.

Testimony of one Blodgett also was admitted, against the objection of the defendant, that somewhere around October, 1911, Frank Derry came to the store of one Ross and inquired for cork stopples; that the clerk in the store, Blodgett, sold him, Derry, "some cork stopples, the number and size of which he [the clerk] could not recall; that it might have been a dozen or two; that he [the clerk] could not say whether it was three or four dozen;" and that "they were small corks for half pint or pint bottles." The jury would have been justified in the belief that the corks used to plug the sprinklers were of the kind sold to Frank Derry, and that they naturally were kept in a place accessible to the defendant. The evidence, therefore, was admissible as tending circumstantially to show that the defendant had the means and the opportunity of procuring corks of the kind used without direct purchase. Frank Derry testified that he did not have any conversation with Wheelwright about cork stopples, and that he did not buy any from Blodgett (the clerk) at the Ross store.

At the close of all the evidence the defendant moved for the exclusion of the testimony as to the acts of Frank Derry "on the ground that no such connection had been shown between Frank Derry and the defendant, or evidence of any such connection offered or introduced as to make the testimony . . . admissible." The judge refused so to do, and the defendant excepted.

No evidence had been introduced tending to show directly or inferentially that as between the defendant and his brother there existed or had existed any business connection or interest other than such as naturally appertains to the relationship of employer and employee. There was no evidence whatsoever showing the presence or absence of any unusual bond of sympathy such as sometimes marks near relationship. Assuming that Frank Derry purchased the corks, and further assuming that they were used to plug the sprinkler heads by the defendant or by some one at his request, there is no evidence that Frank knew the purpose

to which they were to be put or in any way participated in their use or in the setting of the fire.

The testimony of Collins and Wheelwright should have been stricken out, and the exception to the refusal so to do must be sustained.

*So ordered.*

The case was argued at the bar in March, 1915, before *Rugg,* C. J., *Braley, De Courcy, Pierce,* & *Carroll,* JJ., and afterwards was submitted on briefs to all the justices.

*J. P. Sweeney,* (*A. P. White* & *G. C. Richards* with him,) for the defendant.

*H. C. Attwill,* Attorney General, (*J. W. Corcoran,* Assistant Attorney General with him,) for the Commonwealth.