Argued February 2, reargued July 5, reversed and remanded October 10, 1922.

## STATE *v*. ELWELL.

(209 Pac. 616.)

**Criminal Law—Proof of Motive not "Some Other Proof That the Crime has been Committed" Necessary to Warrant Conviction upon Accused's Confession.**

Under Section 1537, Or. L., providing that a confession is insufficient to warrant conviction without "some other proof that the crime has been committed," in arson prosecution, where the state had proved only that the building occupied by accused as tenant had burned, and that accused and his family were in it when it caught fire, proof offered by the state, in connection with accused's confession that accused was in debt, and that he carried insurance upon his stock of merchandise and furniture in the building at the time of the fire, did not supply the statutory requirement of "some other proof that the crime has been committed."

From Clackamas: JAMES U. CAMPBELL, Judge.

In Banc.

For appellant there was a brief over the name of *Messrs. Brownell & Sievers,* with an oral argument by *Mr. Charles T. Sievers.*

For respondent there was a brief and oral argument by *Mr. L. Stipp,* District Attorney.

---

On proof of *corpus delicti* in criminal case, see notes in 1 Ann. Cas. 823; 68 L. R. A. 33; 16 L. R. A. (N. S.) 285; L. R. A. 1916D, 1299.

When confession of accused sufficient to convict, see note in 65 Am. Dec. 676.

McCOURT, J.—This is a criminal action. The defendant by the indictment was charged with the crime of arson by burning a building belonging to another, but occupied by himself as tenant. A trial resulted in a verdict of guilty and judgment of conviction. Defendant appeals, and assigns as error the refusal of the court to grant his request, seasonably made, to direct the jury to acquit him.

The state proved that the building burned; that the defendant had a small stock of merchandise therein and also some furniture, and that he, with his family, occupied the building as a dwelling place; that defendant and his family were in the building at the time it caught fire. The state introduced in evidence a confession of defendant, alleged to have been made by him to the deputy fire marshal. Section 1537, Or. L., provides:

" * * nor is a confession only sufficient to warrant his conviction, without some other proof that the crime has been committed."

To supply the requirement of the statute of "some other proof that the crime has been committed," the state offered without other proof, that the defendant was in debt, and that he carried insurance upon his stock of merchandise and furniture which was in the building at the time of the fire.

In a prosecution for the crime of arson, the *corpus delicti*,—that is, that the crime charged has been committed by someone—consists of two elements: (1) That the building in question burned; and (2) that it burned as the result of the willful and criminal act of some person.

"It is now universally recognized, * * that proof of the single fact that a building has been burned does not show the *corpus delicti* or arson, but it must also

appear that the burning was by a willful act of some person criminally responsible, and not as the result of natural or accidental causes, for when a house burned and nothing appears but that fact, the law rather implies that the fire was the result of accident or some providential cause than of criminal design." 2 R. C. L. 514.

*Spears* v. *State,* 92 Miss. 613 (46 South. 166, 16 L. R. A. (N. S.) 285 and note); *State* v. *Pienick,* 46 Wash. 522 (90 Pac. 645, 13 Ann. Cas. 800, 11 L. R. A. (N. S.) 987); *Bines* v. *State,* 118 Ga. 320 (45 S. E. 376, 68 L. R. A. 33 and note).

In addition to proving the *corpus delicti,* consisting of two elements as above stated, the state, to convict defendant, was required to prove that the defendant was the person who set the fire. Expressed otherwise, it was incumbent upon the state to establish: (1) The burning; (2) That it was done with criminal intent; and (3) That it was done by defendant.

The question arises whether the evidence that defendant was in debt and carried insurance tends to prove that the burning was done with criminal intent. If it does not, then there is an absence of evidence in support of a necessary ingredient of the *corpus delicti,* to wit: the criminal agency in the origin of the fire. The evidence mentioned tended to show that the defendant possessed a motive which might have actuated him to destroy the merchandise and furniture owned by him, for the purpose of obtaining money with which to discharge his indebtedness.

Evidence of motive is relevant in criminal prosecutions to identify the accused as the one who committed the crime, and not to show that the crime has been committed: *People* v. *Simons,* 25 Cal. App. 723 (145 Pac. 145); *State* v. *Wilkins,* 158 N. C. 603 (73 S. E. 992); *Overstreet* v. *State,* 46 Ala. 30; *Lane* v. *Com-*

*monwealth,* 134 Ky. 519 (121 S. W. 486). In some cases such evidence may also tend to show the characteristics of the act involved and which is charged as criminal: *Pointer* v. *United States,* 151 U. S. 396, 413 (14 Sup. Ct. Rep. 410, 38 L. Ed. 208, 216, see, also, Rose's U. S. Notes). In all of these cases the evidence of motive was admitted to connect the defendant with the commission of some criminal act established by other evidence.

In *Baalam* v. *State,* 17 Ala. 451, the court said:

"When it is shown that a crime has been committed and the circumstances point to the accused as the guilty agent, then proof of a motive to commit the offense, though weak and inconclusive evidence, is nevertheless admissible."

The limitations of evidence of motive are clearly pointed out in Starkie on Evidence (10 ed.), page 848, as follows:

"In criminal cases, proof that the party accused was influenced by a strong motive of interest to commit the offense proved to have been committed, although exceedingly weak and inconclusive in itself, and although it be a circumstance which ought never to operate in proof of the *corpus delicti,* yet when that has once been established *aliunde,* it is a circumstance to be considered in conjunction with others which plainly tend to implicate the accused."

Experience teaches that comparatively few of the vast number of motives of interest, desire or dislike, that constantly move men to action result in crime, while some such motive lies back of nearly all, if not all, criminal acts of a serious character. Criminal act following motive is the exception, while motive accompanying criminal acts is the rule, and this is basis of the doctrine of the text above cited.

The presumption attached that the fire resulted from natural or accidental causes; also the defendant was presumed to be innocent. The state, to overcome both of these presumptions, relied upon evidence indicating that the defendant was influenced by a strong motive of interest to commit the criminal act charged. If competent proof had been offered that a crime had been committed, evidence of that motive might have had some tendency to identify the defendant as the perpetrator of the act, but as such motives are not ordinarily followed by criminal acts, the evidence had no logical tendency to prove that any criminal act had been committed.

Until the state offered proof that the building described in the indictment had burned, and that the same was "willfully and maliciously" burned by someone, there was not present in the case any evidence that a crime had been committed with which the defendant might be connected, or to which any motive possessed by him might be referred; proof of the necessary criminal agency was wholly lacking.

While evidence of motive is usually admissible upon the trial of a criminal action for the purpose of identifying the accused as the person who committed the criminal act involved and already established, it is not sufficient, in itself, for that purpose; it constitutes but an item of evidence which may be considered with other facts in evidence, such as the presence of the defendant at the time the offense was committed and his conduct at or near that time, in determining whether the defendant is the person who committed the criminal act which is an essential ingredient of the crime charged.

The evidence of motive introduced by the state did not constitute proof that the property described in

the indictment was burned by the criminal act of someone. That evidence served only to connect the defendant with a criminal act, the commission of which was assumed, but was not proved. No evidence was produced to prove that criminal act, except the confession of defendant. The statute declares that a confession only is insufficient to warrant conviction "without some other proof that the crime has been committed." The motion of defendant for a directed verdict should have been allowed.

The judgment of the Circuit Court should be reversed and the cause remanded for a new trial, and it is so ordered.    REVERSED AND REMANDED.

BEAN, J., concurs.

HARRIS and RAND, JJ., concur in the result.

BURNETT, C. J., Dissenting.—The defendant was indicted for arson alleged to have been committed by burning a building belonging to another but occupied by himself as a tenant, in which he had an insured stock of merchandise. Involved is the defendant's extrajudicial written confession of the commission of the crime charged, which was admitted in evidence. He was convicted, and appeals.

Section 1537, Or. L., reads thus:

"A confession of a defendant, whether in the course of judicial proceedings or to a private person, cannot be given in evidence against him, when made under the influence of fear produced by threats; nor is a confession only sufficient proof to warrant his conviction, without some other proof that the crime has been committed."

The admissibility of the confession is attacked on the ground that it is not shown with sufficient cer-

tainty that it was made voluntarily. As to that, there is in the record the testimony of the deputy fire marshal to whom the confession was originally made on a certain date when he and the defendant were the only ones present. The deputy testifies clearly that no inducements were held out to the defendant to make the confession and that there were no threats or coercion exercised upon him, but, on the contrary, his statements were voluntarily made. The only witness who contradicts this testimony is the defendant himself, who claims that the officer said to him it would be better for him to make a complete confession and that if he did not, the alleged arson would be made to involve his whole family, including his wife, who was then confined to her bed recovering from injuries which she received at the fire. The defendant testified in substance that it was under this coercion that he made and signed the disputed confession.

In the lower part of the building which was burned the defendant had a store and kept the postoffice. He, together with his wife and minor son, a married daughter and her husband, resided in rooms in the building. Two of them were on the first floor at the rear of the store and there were others in the second story. The account as narrated in the confession is to the effect that the property of the defendant in the building was insured; that he was in debt and needed the money to pay his obligations; and that he conceived the idea of burning the building, so as to get the insurance money and use it for that purpose. Accordingly, early in the evening of the day on which the fire occurred, after the evening meal was over, he procured a lighted candle and set it behind some article of furniture next to a chimney which was covered with cloth and paper which he partly detached and

adjusted so that when the candle burned down to a certain point it would ignite the paper. He then went upstairs and read during the evening. His wife, minor son and son-in-law retired and were in bed when the fire broke out. His daughter remained up with him and was also reading during the evening. At a later hour he smelled smoke and looking up, saw a little of it near the flue in the upper room, but attached no importance to it at that time, thinking that the wind had blown down the chimney, causing the smoke to come out into the room. He sat down and read a little longer, when he again noticed the smoke, went downstairs to investigate, and discovered the fire. His daughter carried out the minor child, but his wife stopped to dress and was so delayed that she could not descend the stairway but was compelled to climb out upon the roof adjoining the main building, where she slipped and rolled to the ground, breaking her hip and wrist. The son-in-law made his exit the same way, but was fortunate enough to reach the ground in safety.

The evidence at the trial, as to the narration of the facts after the discovery of the fire, was substantially like that in the confession, but the defendant repudiated all the confession relating to the manner in which the fire started. There was independent evidence given by a disinterested witness, that the building was burned. There was also evidence of the same kind that the contents of the building were insured and that the defendant was in debt.

On the day following the confession made to and reduced to writing by the deputy fire marshal and signed by the defendant, the two met in the sheriff's office at Oregon City and in the presence of that officer and the district attorney, the confession was read

105 Or.—19

over to the defendant and at his instance two slight changes were made, unimportant in their nature, when he reiterated to the other three men present the same confession, and signed a typewritten copy of it as corrected.

The question of admissibility of the confession was one for the decision of the trial judge on all the evidence given on that point in the first instance. In the absence of anything to show abuse of his prerogative we cannot disturb his finding on that subject. We must therefore hold, on the authority of *State* v. *Rogoway*, 45 Or. 601 (78 Pac. 987, 81 Pac. 234, 2 Ann. Cas. 431, note), that the confessions were properly admitted in evidence.

The remaining question is one of more difficulty. Recurring to Section 1537, Or. L., the rule is that a confession is not sufficient alone to warrant a conviction, "without some other proof that the crime has been committed." The last clause is impersonal. It does not require "other proof that the crime has been committed" by the defendant. It says only "that the crime has been committed." In this respect the rule embodied in the confession section is not so stringent as Section 1540, Or. L., relating to the corroboration of testimony of an accomplice. The latter precept is thus laid down:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely show the commission of the crime, or the circumstances of the commission."

The reason for the difference between the two rules is apparent. The testimony of the accomplice is often clouded with self-interest and a design to save himself

from punishment by accusing another; and hence the
requirement that the independent testimony must
tend to connect the defendant with the commission
of the crime, and that it is not sufficient merely to
show the commission or the circumstances thereof.
In a confession, however, when voluntarily made, the
reason of the accomplice rule is not present. The
defendant avowedly connects himself with the com-
mission of the crime, so that it is necessary in addi-
tion thereto only to show that the crime included in
the indictment has been committed, without reference
to the criminal. In arson cases the *corpus delicti*
consists not only of the burning, but also of the addi-
tional factor of unlawfulness. In the effort to prove
that the crime has been committed, therefore, it would
not be sufficient merely to show the burning of the
building, for it is a matter of common occurrence
that buildings take fire and are destroyed without any
pretense of crime being connected with the fire. It
is not required that the proof shall be sufficient to
establish the guilt of the defendant beyond a reason-
able doubt, for this would be to make confessions
negligible. A fair and reasonable construction of the
statute is, that there must be some proof tending to
show that the crime has been committed, aside from
and in addition to the confession.

When the destruction of the building by fire has
been shown, is it enough, as some evidence that it was
criminally burned, to show that the defendant was in
debt, that his goods in the building were burned, and
that he was about the house at the time of the fire?
As said in *Thompson* v. *United States,* 144 Fed. 14
(7 Ann. Cas. 62, 75 C. C. A. 172):

"The very purpose of showing motive is to influ-
ence the jury upon the question of the defendant's

guilt in respect to the offense with which he is charged.''

*Morris* v. *State,* 124 Ala. 44 (27 South. 336), was an instance where it appeared in evidence that the defendant said, ''he was done with Mr. Smith and was not going to have any more to do with him, or let anybody else, if he could help it.'' This statement was held to be admissible in support of a charge of arson, to show motive on the part of the defendant, when taken in connection with the fact that Smith had leased to another a house which the defendant had occupied and which was afterwards burned. In *McAdory* v. *State,* 62 Ala. 154, it was said:

''It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense. It may spring from the lust of gain, or the gratification of an unlawful passion.''

This also was an arson case and the state was permitted to show, as illustrative of the defendant's motive, that there was cotton in the building belonging to one against whom the defendant had a feeling of hatred. Again, in *State* v. *Green,* 92 N. C. 779, the theory of the prosecution was that the defendant had been hired to burn the building. Statements of his were shown to the effect that he had no money but that he soon would have some, and it was disclosed that afterwards he was seen in possession of money. Likewise, in the arson case of *State* v. *Travis,* 39 La. Ann. 356 (1 South. 817), the burned building was a courthouse in which there were some indictments charging the defendants with crime, which it was to their interest to destroy. The court said:

''Proof of such motive would, in itself, be a circumstance tending to establish their guilt.''

These cases teach the general principle that it is competent to show a motive of the defendant as indicating a probability that he committed the act of burning already established.

Going into cases more nearly identical with this, we find that in *Commonwealth* v. *Hudson,* 97 Mass. 565, the defendant kept a provisions store in a room in the same building adjoining the apartment occupied by himself and his family as tenants. He had previously insured his stock of provisions and furniture for $300 each, but none of it was injured or destroyed by the fire which occurred. There was some evidence to the effect that the chattels were worth less than the face of the policy. All this was admitted for the purpose of showing that the defendant had a motive for burning the building in which they were situated. After disposing of other questions, Mr. Justice HOAR said:

"Evidence was admitted to show that the defendant had a strong pecuniary motive to commit the crime with which he was charged. This evidence we think was admissible. It tends to repel the presumption which exists, in addition to the general presumption of innocence, that a man will not commit a crime without reason, inducement or temptation. The evidence should undoubtedly be of a motive peculiar and special to the person accused. But, when it is of this character, it is admitted even on trials for murder: *Commonwealth* v. *Webster,* 5 Cush. (Mass.) 295. The evidence in that case that the person who was killed had been persistently pressing the defendant for payment of a debt which he had no means to pay, was admitted without question."

*Hinkle* v. *State,* 174 Ind. 276 (91 N. E. 1090), was a case where the defendant was the tenant of a hotel and owned the furniture therein, which was mortgaged for $1,200. Evidence that the furniture was insured and that the defendant had applied for addi-

tional insurance shortly before the fire, as stated in the opinion, "was clearly competent as tending to show a motive for incendiarism on appellant's part." In *Lane* v. *Commonwealth,* 134 Ky. 514 (121 S. W. 486), the court held that it was competent to show that the house burned was insured, as it tended to prove motive on the appellant's part; but it was held that the trial court should have charged the jury that this was the only purpose of such evidence. In *O'Daniel* v. *State,* an Indiana case reported in 188 Ind. 477 (123 N. E. 241), involving arson, evidence of insurance of the building was held to be admissible on the question of motive, although the charge was for arson only and not for burning to defraud an insurer. To the same effect are *State* v. *Roth,* 117 Minn. 404 (136 N. W. 12); *Commonwealth* v. *Derry,* 221 Mass. 45 (108 N. E. 890), and *State* v. *Brand,* 77 N. J. L. 486 (72 Atl. 131).

We have direct testimony of the destruction of the building by fire. In order to show that the defendant was criminally connected with the burning and to supply the second of two elements of the crime, the act and the wrongful intent, we have recourse to the circumstantial evidence of his indebtedness and consequent need of money, and the insurance from which he expected to derive the desired funds in case of the fire. The state was entitled to have this testimony go to the jury and to argue from it that the defendant had a motive to commit the crime, having in view the financial result in his favor, if he should succeed in concealing his connection with the crime; and hence that it was more probable that he, rather than another, did the criminal act.

Of course, the burning of insured property the owner of which is in need of money is equivocal in

aspect. It is of common occurrence that such property of such an owner is destroyed by fire innocently. On the other hand, a guilty man might set the fire and the building be destroyed apparently in the same manner. It is for the jury, as judges of the effect and value of the evidence, to make the application of the testimony sinister or favorable, as deemed proper. All we hold in this case on that point is that such circumstances satisfy the injunction of the statute that there must be some evidence of the commission of the crime, besides the defendant's confession.

It may be said with propriety that neither motive nor intent alone will convict one of crime, but that either or both must be applied to or connected with some act or event disclosed by the evidence. This requirement of basic act or event is subserved by the burning itself. To this may be applied the additional evidence of motive. The main question is: Who brought about that event? The circumstance that the defendant had a pecuniary motive inducing him to do the act involved, is competent evidence on the part of the prosecution on that question. Its effect and value are for the jury to determine, but in that incident we have "some other proof that the crime has been committed," and a nucleus is formed about which may be centered the defendant's circumstantial narration of the details, so that his conviction does not rest solely or entirely upon his confession.

For this reason I dissent from the conclusion reached by Mr. Justice McCourt.

Mr. Justice McBride and Mr. Justice Brown concur in this dissent.

BROWN, J., Specially Concurring in the Dissent.— Charles A. Elwell was convicted of arson and appeals.

The indictment accusing the defendant of crime averred that Charles A. Elwell did "willfully and maliciously burn in the night-time a storehouse owned by C. P. Morse and S. H. Dill."

Among the points presented by the bill of exceptions for determination, there is but one serious question, and that is: Does the record contain some proof other than the defendant's extrajudicial confession that the crime of arson has been committed? The defendant occupied the building, charged in the indictment to have been feloniously burned, as a grocery-store and dwelling-house for himself and family, as well as for the purpose of keeping the postoffice of Jennings Lodge therein. A short time before the building was destroyed by fire E. C. Clemens, postoffice inspector, with headquarters at the postoffice building in Portland, Oregon, received an order from the auditor at Washington, D. C., "showing that there was a large balance due on the money order account at Jennings Lodge."

On December 5th, the postal inspector made a formal investigation of the Jennings Lodge postoffice and of all its accounts and found a shortage in the money order account amounting to $2,260.22. In the night-time of December 26th following the investigation, the building so occupied by the defendant was entirely destroyed by fire. On the twenty-seventh day of February following the fire, H. H. Pomeroy, the chief deputy fire marshal of the State of Oregon, pursuant to his duties required by statute, made an investigation of the circumstances surrounding the burning of the storehouse at Jennings Lodge. To

him the defendant confessed to the commission of the crime and gave his motive for its commission. He said:

"I was indebted in a certain manner to the extent of $2,260, which I was obliged to raise by December 27th and had endeavored to secure this money from two or three friends, but without success and in my desperation * * my attention was attracted to an article about a fire and that gave me the idea of burning the store, and with the insurance of $3,500 which I had on the stock of goods and $1,000 which I had carried on my household goods I expected to repay the $2,260 as well as other amounts * * ."

The evidence upon the trial established that the defendant's personal property kept in the building was covered by three policies insuring him against loss or damage by fire in the aggregate amount of $4,500 as stated in the confession. Following the destruction of his property, he immediately made proof of loss to the insurance companies. Reading again from the confession, the defendant said:

"That at about 8 o'clock P. M. of December 26, 1919, I placed a lighted candle alongside the chimney on the first floor in the store * * . The side of the chimney was covered by a wood partition and was cloth and papered. I used about one half of a new candle. * * The cloth and paper was pulled loose from the partition and in such a manner as to come in contact with the candle at the base of the candle. The wood partition was as dry as a bone and highly inflammable. I then went upstairs and did not again go downstairs until the fire occurred."

The time the fire occurred corroborates defendant's confession as to the method of setting the building on fire. It was timed by his candle. On the witness-stand the defendant corroborates his confession in a number of particulars. When he left the storeroom

on the night of the fire he remained upstairs reading; an innocent circumstance within itself, but when taken in connection with his confession, it becomes a circumstance pregnant with meaning. With the confession as a key the jury might believe that he was lying in wait expecting the fire to occur. For two hours his wife and child had been in bed, but not the defendant. It was the defendant who first smelled the smoke of the burning building. This was perfectly natural in view of his confession, for he was waiting and watching. He also was the first to discover the fire. It was the defendant who was last in the store,—a harmless fact in itself, but it afforded him the opportunity to fire the building. Opportunity alone is insufficient to supply the necessary corroborative proof. However, in the glow of the confession and the evidence that the building was burned, together with other circumstances, the jury had a right to consider the fact of opportunity as a circumstance of some weight. In his confession he stated that the wooden partition "was as dry as a bone and highly inflammable"; and that he had set the incendiary candle near the chimney. As a witness, he testified that when he opened the door from the stairway in the storeroom the casing that surrounded the chimney was ablaze up near the top of the room. In his confession he stated that his book accounts and all of his postoffice records were kept on the opposite side of the store from where he had set the candle, and that he had expected to save them when the fire occurred. This portion of his confession is corroborated by him on the witness-stand upon trial. A neighbor who conducted a greenhouse said that he arose about 11 o'clock P. M.; that his place of residence is about two blocks from Jennings Lodge postoffice; that as he went

down to replenish his furnace he saw no fire at Jennings Lodge; that when he came up from attending to his furnace, the sky was red from the fire of the store building. The defendant's candle must have burned down and set the building on fire at about that hour. The postal inspector's testimony corroborates the defendant's confession, as does the testimony given by the insurance agents relating to the policies that covered the defendant's personal property. The daughter's testimony corroborates the defendant's confession relating to the matter of waiting and the discovery of the fire. The defendant testified that his wife was in bed asleep at the time of the fire; that he gave the alarm and attempted to save some records from burning. He abandoned his wife, who was compelled to save herself by leaving the building through a window on to the roof of the porch, from which she fell to the ground and in so doing broke her hip and also her wrist. Defendant concludes his confession with the statement that it "is a true statement in regard to the origin and my motive for setting the candle * * ."

Another circumstance that the jury had a right to consider as having persuasive force is the fact that, after the defendant's confession and arrest and subsequent to appearing in the Justice's Court, he called the district attorney into the hall and informed that officer that he, the defendant, was going to plead guilty and requested the district attorney to intercede with Judge CAMPBELL, judge of the trial court, in his behalf.

It is the organic law that—

. "In all criminal cases whatever, the jury shall have a right to determine the * * facts." Or. Const., Art. 1, § 16.

In the trial of this cause it was the exclusive province of the jury to judge all questions of fact. The court now examines the testimony for the purpose only of ascertaining if there is some other proof than the confession of the commission of the crime, or such a defect in it, as precludes a verdict of guilty.. The defendant's motion to direct a verdict of acquittal may be deemed a demurrer to the evidence. Serving as it does, the purpose of a demurrer, it should be tested by the same rules. It admits the facts and every conclusion which a jury might fairly or reasonably infer from them: *State* v. *Pomeroy,* 30 Or. 16 (46 Pac. 797); *State* v. *Jones,* 18 Or. 256 (22 Pac. 840); *First Nat. Bank* v. *Fire Assn.,* 33 Or. 172 (53 Pac. 8); *Farrin* v. *State Industrial Acc. Com.,* 104 Or. 452 (205 Pac. 984), and the Oregon cases there cited.

The motion for a directed verdict "admits not only all the evidence proves, but all that it tends to prove." *Brown* v. *Oregon Lbr. Co.,* 24 Or. 315, 317 (33 Pac. 557). If there is any evidence other than the defendant's confession showing or tending to prove that the crime of arson was committed as alleged in the indictment, the verdict of the jury should not be disturbed. The court cannot invade the province of the jury because of the fact that different minds might draw different conclusions from the evidence.

The Criminal Code of New York, Section 395, provides that:

"A confession of a defendant * * is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed."

In applying that rule the Court of Appeals of that state said:

"It is insisted that under the statute the *corpus delicti* must be proved, or evidence given tending to prove it, wholly independent of the confession * * . But we are of opinion that when, in addition to the confession, there is proof of circumstances which, although they may have an innocent construction, are nevertheless calculated to suggest the commission of crime, and for the explanation of which the confession furnishes the key, the case cannot be taken from the jury for a noncompliance with the requirement of the statute. The words of the statute, 'additional proof that the crime charged has been committed,' seem to imply that the confession is to be treated as evidence of the *corpus delicti,* that is, not only of the subjective criminal act, but also the criminal agency of the defendant; in other words, as competent proof of the body of the crime, though insufficient without corroboration to warrant a conviction. 'Full proof,' said NELSON, Ch. J., in *People* v. *Bagley* (16 Wend. 53, 59), 'of the body of the crime, the *corpus delicti,* independently of the confession, is not required by any of the cases and in many of them slight corroborating facts were held sufficient' '': *People* v. *Jaehne,* 103 N. Y. 182, 199, 200 (8 N. E. 374, 381).

A valuable note on the subject of proof of *corpus delicti* in a criminal case is contained in 68 L. R. A., pp. 3–80, inclusive. The editor states as a conclusion from the numerous decisions therein noted, that—

"While the confession of the accused alone is insufficient to sustain a conviction for the crime with which he is charged, and other evidence of the *corpus delicti* is essential thereto, yet the confession may be taken into consideration in connection with such other evidence in establishing the *corpus delicti.*

"* * *

"Not infrequently the evidence which tends to, and does, prove the existence of the *corpus delicti* tends also to connect the accused with the crime; and in such cases the evidence is proper for both purposes."

As was aptly stated in *Smith* v. *State,* 64 Ga. 605:

"Arson can seldom be established by positive testimony. The character of the offense makes it necessarily dependent for conviction upon confessions and corroborating circumstances. The force to be given to the corroboration must be left to an upright and intelligent jury."

And in *Wade* v. *State,* 16 Ga. App. 163, 167 (84 S. E. 593), it was said:

"It is not often possible to make out a case of arson by direct proof establishing the *corpus delicti* or showing the connection of the defendant with the commission of the crime; for arson is seldom committed except at an hour when there is small chance that the criminal will be actually observed in the execution of his nefarious purpose, and it is also generally easy to commit the crime by stealth, without the help of an accomplice, without the beating of drums or blare of trumpets or any betraying noises; and therefore circumstances must generally be depended upon not only to show the guilt of the accused, but to establish the *corpus delicti.*"

It has been frequently said by the courts and textwriters that no universal and invariable rule can be laid down in regard to the proof of the *corpus delicti.* Each case depends upon its own peculiar circumstances: *State* v. *Williams,* 46 Or. 287 (80 Pac. 655); *State* v. *Weston,* 102 Or. 102, 119 (201 Pac. 1083). In *State* v. *Howard,* 102 Or. 431, 457 (203 Pac. 311), this court said:

"We take it that the corroboration is sufficient, if there is other evidence of the *corpus delicti* and of the agency of the defendant in the commission of the crime."

The confession of Elwell may be considered together with all the other evidence to establish the fact

that a crime was committed: 2 Wharton's Criminal Evidence, p. 1316, and authorities under note 6.

This excerpt has been frequently cited with approval by state and federal courts:

"A confession will be sufficient if there be such extrinsic corroborative circumstances as will, when taken in connection with the confession, establish the prisoner's guilt in the minds of the jury beyond a reasonable doubt." 6 Am. & Eng. Ency. of Ev. (2 ed.), 582, 583.

The following expression of the law is applicable to the case in issue:

"Where there has been a confession by the accused, much slighter proof is required to establish the *corpus delicti* than would be necessary where the state must make out the entire case, unaided by a confession. Any corroborative proof in such a case will be held sufficient which satisfies the mind that it is a real and not an imaginary crime which the accused has confessed, and the fact that he was the guilty party may be found by the jury, on proof much slighter than that ordinarily essential: *People* v. *Bagley,* 16 Wend. (N. Y.) 53." *Heard* v. *State,* 59 Miss. 545, 546.

It is said by the editors of Ency. of Ev., Vol. 3, 665:

"It is now well established that the uncorroborated extrajudicial confessions of the defendant may be considered as evidence of the *corpus delicti* in connection with the facts and circumstances tending to show the defendant's guilty connection with the offense charged."

Motive often becomes a strong circumstance in pointing out the perpetrator of a criminal act. Motive is written large in this record by the defendant's confession of his "desperation" in the matter of repaying the $2,260 hereinbefore referred to. The

postal inspector's evidence and other proof strengthen the evidence of motive that might have actuated the person to whom the jury found to be the doer of the act of burning the storehouse.

In the case of *People* v. *Fitzgerald,* 156 N. Y. 253, (50 N. E. 846), the prosecution claimed that the defendant had a motive in insuring the building to be burned. The court said in that case:

"In the investigation of all charges of crime it is competent to prove a motive on the part of the accused for the commission of the criminal act. Motive is an inducement, or that which leads or tempts the mind to indulge the criminal act. It is resorted to as a means of arriving at an ultimate fact, not for the purpose of explaining the reason of a criminal act which has been clearly proved, but for the important aid it may render in completing the proof of the commission of the act when it might otherwise remain in doubt. With motives, in any speculative sense, neither the law nor the tribunal which administers it has any concern. It is in cases of proof by circumstantial evidence that the motive often becomes not only material but controlling, and in such cases the facts from which it may be inferred must be proved."

To the same effect are *People* v. *Bennett,* 49 N. Y. 137; Burrell on Circumstantial Evidence, 296; 20 Am. & Eng. Ency. of Law (2 ed.), 1077, 1078; *State* v. *Hembree,* 54 Or. 463 (103 Pac. 1008).

In *State* v. *Hansen,* 25 Or. 391 (35 Pac. 976), certain evidence was held admissible as "tending to corroborate the defendant's confession, to show his connection with the commission of the crime and the motive for its perpetration."

In the case of *First Nat. Bank* v. *Fire Assn., supra,* Justice WOLVERTON, in speaking for this court, said:

"That there was no direct evidence of the explicit fact of firing the goods, implicating the proprietors, none can gainsay; but the question here is whether there was any evidence, direct or circumstantial, sufficient to go to the jury, from which they could fairly infer the fact at issue."

After detailing the conduct of Marcus Wolf, one of the proprietors, prior and subsequent to the discovery of the fire, the Justice wrote:

"For the purpose of showing a motive, evidence was adduced tending to show that the stock of goods on hand was in some respects unsalable and undesirable, that times were somewhat depressing, and that they were financially involved to the extent of some $50,000. * * This testimony was pertinent to go to the jury, and was of a character from which they might infer, as they did, that the fire was of incendiary origin, and that Marcus Wolf was responsible for its inception."

In *People* v. *Wood,* 3 Parker's Cr. Rep. (N. Y.) 681, it is said that—

"Motive is a minor or auxiliary fact, from which, when established in connection with other necessary facts, the main or primary fact of guilt may be inferred, and it may be established by circumstantial evidence the same as any other fact. The proper inquiry, when the circumstance is offered, is, does it fairly tend to raise an inference in favor of the existence of the fact proposed to be proved. If it does, it is admissible, whether such fact or circumstances be innocent or criminal in its character."

It was said in the Supreme Court of California in the case of *People* v. *Lane,* 100 Cal. 388 (34 Pac. 860):

"Motive precedes intention, and is the cause or reason upon which it is formed; and if this testimony clearly tended to show a pre-existing motive for the killing of Canfield, it would be admissible as tending

105 Or.—20

to show that the homicide was not accidental, but was intentional and premeditated.''

Says a text-writer, 2 Wharton's Criminal Evidence, page 1318:

''Nothing so convinces as a confession which we believe to be true. Nothing is so uncertain as the testimony offered to prove the confession.''

In the case at issue the confession was reduced to writing and signed by the defendant. The damaging statements contained therein do not depend for authenticity upon the frailty of human memory, nor upon the integrity of witnesses. It is a written confession, although made in response to questions propounded to him. This court has held that—

''A confession taken down by someone else and read to and signed by the accused is as much his written declaration as one entirely prepared by his own hand would be.'' *State* v. *Morris,* 83 Or. 429, 441 (163 Pac. 567); *State* v. *Stevenson,* 98 Or. 285, 293 (193 Pac. 1030).

In the case at bar the confession was read by the defendant; corrections were made by him, then he signed. In fact he admitted when a witness that he made the inculpatory statements contained in his confession but claimed that they were involuntary. In a special concurring opinion in *State* v. *Morris, supra,* Mr. Justice HARRIS says:

The ''quality of voluntariness, so necessary to a confession, presents itself at two stages of a trial: (1) To the judge; and (2) to the jury. The judge passes upon the admissibility and the jurors are the exclusive judges of the weight and credibility of the confession. The decision of the judge is only preliminary while that of the jury is ultimate.''

The jury had a right to believe the defendant's confession to be his deliberate act and that it stated the

truth, but were restrained by a rule of criminal procedure from finding him guilty until there was some other proof of the commission of the crime. "Some other proof," as used in Section 1537, Or. L., means additional proof, not the same, but different. It means that the confession of the defendant relating to the commission of the crime must be corroborated. To corroborate, is to strengthen; to affirm by additional security, to add strength.

It was said in *State* v. *Guild,* 10 N. J. L. 180 (18 Am. Dec. 404), that—

"Corroborating circumstances, then, used in reference to a confession, are such as serve to strengthen it, to render it more probable. Such, in short, as may serve to impress a jury with a belief of its truth."

The proof fulfills the commandment of the law.

Section 1537 of our Code enacts a principle into statutory law that has been designed by the "collected reason of ages." It is a human principle intended to shield an innocent person from convicting himself of crime by making a confession as the result of some hallucination.

The law out of tender regard for man's liberty and life must be satisfied that a real and not an imaginary crime has been committed before it strikes. In this case the record justifies the verdict of the jury. They were the judges of the facts. They could reasonably find that the burning of the storehouse constituted a real and not an imaginary crime and that Elwell was the man.

For the foregoing reasons I concur in the conclusion of the dissenting opinion of Mr. Chief Justice BURNETT.